Case 51. — PROSECUTION AGAINST WILLIS MOUNT FOR MURDER.—April 27.

## Mount v. Commonwealth.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Defendant convicted of manslaughter and appeals. Reversed.

Homicide—Change of Venue—Discretion of Court—Continuance—Absent Witness—Objection to Stenographic Report—Jurors—Previous Opinion—New Trial—Review on Appeal—Hearsay Evidence—Misconduct of Attorney—Rebuke of Court—Effect.

1. Change of Venue—Discretion of Court—On the motion of de-

Mount v. Commonwealth.

fendant in a criminal prosecution for a change of venue the burden is on him to show that he can not get a fair trial in the county where the indictment was found. The motion is addressed to the sound discretion of the court, and this court will not interfere with its discretion unless it be made to appear with reasonable certainty that there was a manifest error on the part of that court in its decision of the question.

2. Continuance—Absent Witness—Reading of Stenographic Report—Objection—Where on a second trial of a defendant indicted for murder a witness who testified on the former trial was absent and the defendant filed an affidavit stating he can prove additional facts by the absent witness (reciting them) that are material to his defense and that can not be proved by any other witness, it was error in the court to refuse to grant the defendant a continuance because he would not consent for the stenographic report of the testimony of such witness, made on the former trial, to be used as his evidence on the trial then pending.

3. Jurors—Previous Opinions—New Trial—Review on Appeal— The fact that it was shown on the motion for a new trial that two of the jurors had expresed opinions before the trial that the defendant was guilty of the charge and ought to be locked up or hanged, can not be reviewed by this court under section 281, Criminal Code, which provides that the decision of the lower court upon a motion for a new trial shall not be subject to exception.

4. Evidence—Hearsay—Incompetency—A statement by a witness in regard to the reputation of a witness for defendant that one Spaulding had told him that such witness had sworn to a lie was incompetent, and should have been excluded by the court.

5. Misconduct of Attorney—Rebuke of Court—Effect—A statement by the attorney for the Commonwealth in his closing argument to the jury that, "if you convict the defendant, in my opinion, a more damnable villian never entered the doors of the penitentiary," though rebuked by the court, who told the jury that it ought not to influence them, was especially improper, because outside the record, grossly abusive of the prisoner at the bar, and so highly inflammatory in spirit and utterance as to be calculated to excite the passions and prejudices of the jury.

SAM'L H. CROSSLAND and THOS. E. MOSS for appellant.

1. The circuit court erred to the prejudice of the substantial

rights of the appellant by overruling the motion for a change of venue.

(a) This court has heretofore decided that it would not disturb or reverse the judgment of the circuit court unless it had appeared that there had been an abuse of discretion, or where the evidence at the trial of the motion had been conflicting. I insist that an inspection of the evidence upon the motion shows that there was an abuse of discretion, and that there was no real conflict of evidence.

2. We are fully aware of the numerous decisions of this court, as well as the provisions of the Code of Practice that errors arising under sec. 281 of the Code, upon challenge to the panel, and for cause, and upon motion for a new trial, shall not be subject to exception; but this court can reverse for errors in refusing to grant a change of venue, where the necessity is shown to exist, and these things show that the necessity did exist, and that by reason of its existence he has been prevented from obtaining a fair trial.

3. The trial court erred in overruling defendant's motion for a continuance.

(a) No objection was taken to the affidavit; the materiality of the evidence was admitted; also it was admitted that proper diligence had been used, and that the evidence could be obtained by the next term of the court, and the attorney for the Commonwealth refusing to consent for the affidavit to be read as the deposition of Wm. Bishop.

(b) The court announced that it would permit the stenographic notes taken on the former trial to be read as evidence of said Bishop, and if the defendant refused to consent thereto it would not permit the case to be continued, nor permit the affidavit to be read as the evidence of said Bishop, and the defendant still refused to consent to the reading of said stenographic notes by the stenographer of the evidence of said Bishop. The court overruled the motion for a continuance and refused to allow the affidavit to be read as the evidence of said Bishop.

4. The circuit court committed prejudicial errors in the admission of incompetent evidence.

This was a flagrant outrage upon the rights of the appellant, and it is impossible to estimate the injurious effect it probably had against him in the minds of the jury. The law does not permit courts to speculate upon the probable consequence of such errors, and their commission entitles appellant to another, and it is devoutly to be hoped, a fair trial.

5. Both the county attorney and Commonwealth's attorney were guilty of gross misconduct in their argument to the jury, to which the defendant objected and excepted, and which was calculated

to mislead the jury and induce them to bring in an erroneous verdict.

### AUTHORITIES CITED.

1. On change of venue: Johnson v. Commonwealth, 82 Ky., 119-120; Bowman v. Commonwealth, 96 Ky., 14; Crockett v. Commonwealth, 100 Ky., 385; Draughn v. Commonwealth, 20 Ky. Law Rep., 102; Barnes v. Commonwealth, 22 Ky. Law Rep., 1802; Greer v. Commonwealth, 23 Ky. Law Rep., 489; Hasson v. Common wealth, 10 Ky. Law Rep., 1055-6.

2. Continuance: Crim. Code of Prac., sec. 189; Ky. Stats., sec. 4643.

3. Incompetent evidence: Champ v. Commonwealth, 2 Met., 23 and 24; Loving v. Commonwealth, 80 Ky., 510-11-12; Crittenden v. Commonwealth, 82 Ky., 165-6-7-8; Commonwealth v. Hourigan, 89 Ky., 312-13; Kennedy v. Commonwealth, 14 Bush, 357; Feltner v. Commonwealth, 23 Ky. Law Rep., 1110; Nicely v. Commonwealth, 22 Ky. Law Rep., 900; Saylor v. Commonwealth, 17 Ky. Law Rep., 959.

4. Failure to admonish jury as to effect of discrediting evidence: Alford v. Commonwealth, 26 Ky. Law Rep., 154; Fueston v. Commonwealth, 91 Ky., 230; Jones v. Commonwealth, 20 Ky. Law Rep., 355; Collins v. Commonwealth, 23 Ky. Law Rep., 743; Mullins v. Commonwealth, 23 Ky. Law Rep., 2433; Ashcroft v. Commonwealth, 24 Ky. Law Rep., 488.

5. Duties and misconduct of Commonwealth's attorneys: Dilger v. Commonwealth, 88 Ky., 533; Baker v. Commonwealth, 20 Ky. Law Rep., 1784-5; Cargill v. Commonwealth, 12 Ky. Law Rep., 151; Howard v. Commonwealth, 24 Ky. Law Rep., 1854; Gilbert v. Commonwealth, 21 Ky. Law Rep., 545; Rhodes v. Commonwealth, 21 Ky. Law Rep., 1071; Powers v. Commonwealth, 26 Ky. Law Rep., 1113.

N. B. HAYS, Attorney General, C. H. MORRIS and JOHN G. LOVETT for appellee.

1. The first two objections made by counsel for the appellant are the usual formal ones, to the effect that the verdict is against the law and the evidence. The court properly instructed the jury on the law of the case, and the jury were certainly justified in returning a verdict of guilty under the evidence. There was an abundance of evidence on which to support a verdict of guilty, and that being true this court will not take cognizance of this objection, nor will it for these reasons disturb the verdict of the lower court.

2. The third objection will of course be considered on the

entire record and bill of exceptions, our contention being that appellant was awarded a fair and impartial trial of this case.

3. As to the contention that the jury were permitted to hear incompetent and illegal eviαence, we say that we have not for quite a while seen a record showing as little objectionable evidence. In fact there was little evidence objected to, and not in a single instance was there any objectionable evidence permitted to go to the jury, nor was there any evidence withheld from the jury which should have been heard by them.

4. The tenth ground is refusal to grant a change of veune on petition of the appellant. The proof is conflicting, such as it is, and we presume the trial judge did not abuse the discretion given him under the law. The killing had taken place one year prior to the trial; there was no excitement at the time the trial was held; there had been a mistrial of the case, and while it is true that a number of citizens in an unsatisfactory manner said he could not get a fair trial, as many more were of the opinion that he could. A jury was obtained without ordering a special venire.

5. The next ground relied on is the refusal of the court to grant a continuance; this is not tenable, as the affidavits of the defendant as to what the absent witnesses, Bugg and Walker, would testify were read on the trial of the case, and the testimony, as shown by stenographic notes taken on a former trial of the case, of Will Bishop, were all read to the jury as the evidence of the absent witnesses. It is presumed that the defendant gave substantially their testimony. He should not complain if he did not.

6. We contend that the objections made privately to the judge by counsel for appellant to the argument made by the Commonwealth attorney do not preserve any question for the Court of Appeals. (Farris v. Commonwealth, 14 Bush, 363.)

7. In this case we admit that said argument was improper. The bill of evidence shows that appellant's attorney interrupted said Commonwealth's attorney in the presence of the jury, and said: "Gentlemen, that is not argument, but abuse and vituperation," and the remarks, if improper at all, had a tendency to perjudice the jury against the Commonwealth's attorney instead of the appellant, taking what appellant's attorney said to the jury in reply to same, but the court told the jury not to consider said remarks, that they were improper, and rebuked the Commonwealth's attorney in the presence of the jury for using said remarks. (Whitney v. Commonwealth, 24 Ky. Law Rep., 2524.)

## AUTHORITIES CITED.

Dilger v. Commonwealth, 88 Ky., 550.          :

OPINION BY JUDGE SETTLE—Reversing.

The appellant, Willis Mount, shot and killed Willis Nutty in the city of Paducah. He was indicted by the grand jury for murder, and in the trial which followed the jury failed to agree upon a verdict. But upon a second trial the jury found him guilty of voluntary manslaughter, and fixed his punishment at confinement in the penitentiary for twenty-one years. A new trial was refused him by the lower court, and the case is now before us for review.

The salient facts of the homicide, as shown by the bill of evidence, were as follows: On the night of December 10, 1903, between 10 and 11 o'clock, appellant and several other persons were in a room over and connected with Stagg's saloon, the room being in the third story of the building in which the saloon was situated. Nutty entered the room, and, rapping a table with a silver coin, said he would play the field. Al. Phelps, one of the persons present, applying an indecent epithet to Nutty, said: "You came up here to shoot craps, and now you want to play the field." Nutty replied that (meaning the opprobrious epithet) was no more than Phelps was. Phelps then remarked to Nutty that, if he (Phelps) was running the game, he would not allow him in it. When Nutty came into the room, and until he and Phelps got into the conversation referred to, appellant was lying with two other men on a bed in the corner of the room, but when the discussion between Nutty and Phelps began he got up from the bed, and with his hand in his pocket remarked, "I wonder what he is going to do," and then advanced toward where Nutty and Phelps were standing at the table. As appellant approached Nutty, the latter said to him, "Mount, I know you; you look like thirty cents to me." Ap-

pellant thereupon drew his pistol, pointed it at Nutty, and fired. N'utty wheeled to the right, and appellant fired at him the second time. Nutty then fell to the floor and soon expired. One of the pistol balls entered the mouth, and the other the back, and both wounds, in the opinion of the physician, were mortal. After or during the discussion with Phelps, Nutty put the coin he held in his hand in a side pocket, and the hand remained in the same pocket until he was shot by appellant, but no pistol or other weapon was found on his body after his death.

Appellant attempted to justify the homicide upon the ground of self-defense and apparent necessity, his own testimony being to the effect that five years before Nutty had attempted to take his life, and then cut him in the throat; that he had but a little while before his death left the penitentiary, and returned to Paducah, and repeatedly threatened appellant's life on the day of his death, saying that he would kill him and leave the city. These threats were communicated to appellant—some of them within an hour of the homicide; that on the occasion of the shooting he (appellant) got up from the bed for the purpose of leaving the room, when he was addressed by Nutty in the language above quoted, intermixed with oaths and epithets, upon hearing which, and seeing Nutty suddenly throw his hand to his pocket, or behind him, he believed he was about to execute his threats to take his (appellant's) life, and he thereupon shot him to save his own life, which he in good faith then believed was about to be taken. Appellant made proof by several witnesses of the threats of Nutty to kill him, but was himself uncorroborated by any other witness present as to the oaths and epithets claimed to have been applied to him by Nutty at the time of the shooting, or as to sudden throw-

ing by the latter of his hand to his pocket or behind him. As already stated, the only testimony from other witnesses present as to the remarks and conduct of Nutty was that he said to appellant, "Mount, I know you; you look like thirty cents to me;" and only one witness (McGregor) stated that his hand remained in the pocket in which he placed the coin he exhibited after entering the room. A good deal of evidence was introduced by appellant to prove that Nutty was a violent, quarrelsome and dangerous man, and none was introduced by the prosecution to show that such was not his reputation.

Quite a number of alleged errors were assigned by appellant in the grounds for a new trial, nearly all of which are now relied on for a reversal, but we will only consider such of them as we think material. It is insisted for appellant that the court erred in refusing him a change of venue. The proof heard on the motion was conflicting—so much so, indeed, that it is difficult to determine on which side of the question it preponderates; and this of itself is sufficient to deter us from interfering with the ruling of the trial court. The question was one to be settled by that court upon the proof. The burden was upon the appellant to show that he could not get a fair trial in McCracken county. And while this court may properly review the decision of the lower court in granting or refusing a change of venue, it will not interfere with its exercise of discretion in that matter, unless it is made to appear with reasonable certainty that there was manifest error upon the part of that court in its decision of the question. (Dilger v. Commonwealth, 88 Ky., 550, 11 Ky. Law Rep., 67, 11 S. W., 651.) We may also add that the homicide occurred a year before the last trial. There had been a mistrial in the meantime, and it does not ap-

pear that at either the first or last trial there existed any unusual excitement or public clamor against appellant.

It is likewise contended by appellant that the lower court erred in refusing him a continuance of the case. It appears, from the affidavit for the continuance that it was asked because of the absence of R. J. Bugg, Wm. Bishop and Jack Walker. The Commonwealth's attorney agreed that the statements of the affidavit as to what appellant expected to prove by Bugg and Walker might be read on the trial as their depositions, respectively, but refused to admit as the deposition of Wm. Bishop what the affidavit stated he would testify in appellant's behalf if present. The court then announced that the case would be continued, whereupon the Commonwealth's attorney expressed to the court and to appellant his consent that the stenographic notes of the witness, Wm. Bishop, taken upon a former trial of the case, might be read as his deposition in lieu of appellant's affidavit as to what he could prove by him. Appellant refused to consent to the reading of the stenographic notes of Bishop's testimony taken on the former trial. The court then said he would permit the stenographic notes of Bishop's testimony to be read if appellant would consent thereto, but, if such consent was not given, he would not allow the case to be continued. And upon appellant's persisting in withholding his consent to the reading of the stenographic notes, his motion for a continuance was overruled by the court, and he was forced into trial without the presence or testimony of Bishop, to which he at the time excepted. There was no complaint on the part of the Commonwealth that appellant was not diligent in trying to procure the attendance at the trial of the three witnesses named in the affidavit, nor was it claimed

that there was no probability of their being present at the next term of the court, or that their testimony (especially that of Bishop) was not material. The affidavit shows that Bishop, if present, would have testified that about a week before Nutty was killed he told Bishop "that he (Nutty) would kill that son of a b—— Willis Mount before he left Paducah;" that Nutty was in Paducah at the time for a few days only, attending races and the fair; and that he (Bishop) communicated this threat to appellant the same night it was made, and advised him to look out for Nutty; that Bishop would further have testified that he and appellant were on a bed in the room where the killing took place and at the time Nutty and Phelps were quarreling; that appellant got off the bed, and Nutty started toward him; Bishop stepped between them, and Nutty had his hand in his pocket at the time; that he (Bishop) then started downstairs, and after he left the room heard the shooting. It is unnecessary to set forth the facts to which it was stated in the affidavit Bugg and Walker would testify, as they were both present and testified on the trial. Nor is it necessary or proper to compare the testimony attributed by the affidavit to Bishop, with his testimony given on the first trial as shown by the transcript made from the stenographic notes, which the court made a part of the record, and which was in fact filed by the official stenographer by order of the court after appellant had refused to consent that it be read as the evidence of Bishop. It is true it was filed with and as a part of the record before any evidence was introduced, but appellant, as shown by the record, objected to its being filed and excepted to the filing thereof, and it was not, in fact, read as evidence on the trial. In view of the refusal of appellant to consent that it

be read as the deposition of Bishop, it had no place in the record of the last trial. If it had been filed before the court overruled the motion for a continuance, it could not have been used or considered upon the motion, to contradict the statements of the affidavit for the continuance, for this court has repeatedly held that, for the purpose of such motion, the trial court must presume the statements of the affidavits are true, and that it is never permissible to allow the filing of counter affidavits to contradict the statements of the defendant's affidavit as to what his absent witness would prove. (Baker v. Commonwealth, 10 S. W., 386, 10 Ky. Law Rep., 746; Wells v. Commonwealth, 13 S. W., 915, 12 Ky. Law Rep., 111; Salisbury v. Commonwealth, 79 Ky., 425, 3 Ky. Law Rep., 111.)

The fact, therefore, if it be a fact, that the affidavit for the continuance states that the absent witness, Bishop, would prove certain facts that are not to be found in his testimony given on the former trial, as contained in the transcript made from the stenographic notes of such testimony, did not authorize the court to refuse a continuance because appellant would not consent that the transcript of the official stenographer might be read as Bishop's deposition. The sufficiency of the affidavit and the materiality of Bishop's evidence were conceded by the lower court in making the announcement that the case would be continued, when the Commonwealth's attorney declared that he would not admit the appellant's affidavit as to what he expected to prove by Bishop as the deposition of the latter, and the mind of the court was evidently fixed as to appellant's right to a continuance until the Commonwealth's attorney said that he would consent that the stenographic notes of Bishop's testimony taken on the first trial

might be read. The effect of the court's ruling was to either force appellant to unwillingly agree to the admission of the stenographic report of the testimony of Bishop given on a previous trial, which under the statute (sec. 4643, Ky. Stats., 1903), could not be done without his consent, or, if he refused such consent, to deprive him altogether of the benefit of Bishop's testimony, which was admittedly material, and not only material, but some of it was as to a fact appellant could not, as shown by the bill of evidence, prove by any other witness, for no other witness testified that Nutty started toward appellant with his hand in his pocket as the latter got off the bed. Though McGregor testified that Nutty put his hand in his pocket, he says he did so in putting his money in it, and that he had not removed his hand from the pocket when shot by appellant. Of the other persons in the room at the time of the killing, not one who was introduced as a witness testified that Nutty ever had his hand in his pocket, and none of them—not even McGregor—said that he saw Nutty start toward appellant. We are clearly of opinion that the lower court erred to the prejudice of the substantial rights of the appellant in refusing him a continuance.

Another contention of the appellant is that the court erred in not discharging the jury before the introduction of the evidence, upon the motion of appellant to that effect, supported by proof in the form of affidavits that E. L. Simmons, a member of the jury, had, before becoming a member thereof, expressed the opinion that appellant should be kept locked up, and further that it was error for the court to refuse him a new trial, as the affidavits furnished on the motion therefor showed that C. S. Smith, also a member of the jury, had formed and expressed an opinion

before the trial that appellant was guilty and ought to be hanged.

The last two alleged errors may be disposed of together and in a few words. Sec. 281, Crim. Code Prac., provides: "The decisions of the court upon challenges to the panel, and for cause, upon motion to set aside an indictment, and upon motions for a new trial, shall not be subject to exception." The language of the section, supra, deprives this court of revisory power over error in the formation of a jury, or error to which the attention of the trial court is called for the first time on a motion for a new trial; hence we are without authority to reverse this case because of the two alleged errors in question. (Howard v. Commonwealth, 118 Ky., 1, 80 S. W., 211, 25 Ky. Law Rep., 2213; Alderson v. Commonwealth, 74 S. W., 679, 25 Ky. Law Rep., 32; Curtis v. Commonwealth, 62 S. W., 886, 23 Ky. Law Rep., 267.)

Appellant further complains that incompetent evidence was admitted by the court to his prejudice. The only incompetent evidence we have discovered in the record is found in the testimony of the witness, Henry Douglass, who was permitted to state, in regard to the reputation of Bob Curling, a witness for appellant, that one Spaulding had told him that Curling had sworn to a lie against his brother at Union City. The testimony in question related to a particular act or transaction which was in no way a subject of investigation in the case at bar. The Commonwealth should have contented itself with proof as to the general reputation of the witness attacked, for truth or morality. The statement complained of should therefore have been excluded by the court.

Yet another complaint of appellant is that the trial

court, over his objection, permitted certain improper and prejudicial statements to be made by the counsel for the Commonwealth in argument to the jury. We have carefully read the several alleged improper statements of counsel. Without discussing them in detail, we think some of them were objectionable, but only one of them was calculated to prejudice the rights of appellant, and it was made by the Commonwealth's attorney, who said in closing his argument to the jury: "If you convict the defendant, in my opinion, a more damnable villain never entered the doors of the penitentiary." This statement was rebuked by the court, and the jury told that it ought not to influence them. The statement was especially improper, because outside the record, grossly abusive to the prisoner at the bar, who was powerless to resent or prevent it, and so highly inflammatory in spirit and utterance as to be calculated to excite the passions and prejudices of the jury, when their minds and judgments should have been cool and dispassionate in dealing with the life and liberty of a fellow being; it being their duty, if his guilt was established according to the forms of law, to fairly and impartially mete out to him such punishment as was commensurate with that guilt, and, upon the other hand, equally their duty to let him go acquit if, under the evidence, there was reasonable doubt of his guilt. We quote from the opinion of this court in Baker v. Commonwealth, 50 S. W., 54, 20 Ky. Law Rep., 1784, the following, which aptly illustrates our views upon this subject: * * * "The district attorney is a quasi judicial officer. He represents the Commonwealth, and the Commonwealth demands no victims. It seeks justice only—equal and impartial justice—and it is as much the duty of the district attorney to see that no innocent man suffers as it is

to see that no guilty man escapes; hence he should act impartially. He should present the Commonwealth's case fairly, and should not press upon the jury any deductions from the evidence that are not strictly legitimate. When he exceeds this limit, and, in hot zeal, seeks to influence them by appealing to their prejudices, he is no longer an impartial officer, but becomes a heated partisan. His object, like the court's, should be simply justice, and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may result in doing justice to the prisoner in the particular case, yet justice so attained is unjust and dangerous to the whole community." The rebuke administered by the trial judge for the opprobrious and unwarranted language of the Commonwealth's attorney, and his admonition to the jury not to be influenced by it, doubtless limited to some extent, but did not entirely destroy, its hurtful effect upon the jury; but, in view of the interference of the judge, we do not think the judgment should be reversed on account of the improper remarks of counsel. We are, however, of opinion that because of the refusal of the lower court to grant appellant a continuance, and on account of the admission of the incompetent evidence to which we have referred, he did not have a fair and impartial trial.

There was no formal objection to the instructions. They are clear in meaning and exceptionally well expressed.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.