## Johnson v. Commonwealth.

(Decided January 14, 1927.)

## Appeal from Hopkins Circuit Court.

1. Criminal Law—Admission of Evidence of Another Crime to Show Motive Held Prejudicial Error, Where There was no Immediate Connection Between Crimes.—In prosecution for murder, alleged to have been committed while resisting arrest for unlawfully riding on passenger train without paying fares, admission of evidence of crime committed months before in another county, to show that motive for murder was to resist arrest for that crime, held prejudicial error.

2. Criminal Law—Where Evidence of Former Shooting was Wrongfully Admitted, Evidence Admitting and Explaining Such Shooting on Defendant's Cross-Examination did Not Cure Error.—In prosecution for murder, where evidence of former shooting by defendant was wrongfully admitted, defendant's testimony on cross-examination, admitting and explaining shooting, did not cure error, since defendant was not required to object to every question relative to former offense after court had ruled that evidence was competent.

3. Criminal Law—Defendant had Right to Explain Evidence of Another Crime, Admitted Over His Objection.—In prosecution for murder, where evidence of former shooting by defendant was admitted over his objection to explain motive for present crime, defedant had right to explain former shooting.

4. Criminal Law—Commonwealth Attorney's Duty is to See that Legal Rights of Accused as Well as Those of Commonwealth are Fully Protected.—Attorney for Commonwealth is officer of state, and it is his duty to see that legal rights of accused as well as those of Commonwealth are fully protected.

5. Criminal Law—In Prosecution of Negro for Murder, Attorney's Depiction of Funeral and Bedside Scenes Outside Record Held Error.—In prosecution of negro for murder, arguments of Commonwealth's attorney, based on incompetent evidence admitted, and also on facts at scenes at bedside of deceased and at funeral, calculated to inflame passion of jury and prejudice them against accused, held prejudicial.

JOHN D. CARROLL and JOHN S. CARROLL and W. D. ORR for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Appellant and Son Sommers were jointly indicted in the Hopkins circuit court charged with the murder of

Enos Murphey and, on a separate trial, appellant was found guilty and his punishment fixed at death. The trial court having refused to grant him a new trial he has appealed.

The appellant and Son Sommers, two negroes, were stealing a ride on a passenger train which arrived in Madisonville about 9 o'clock in the evening of March 7, 1925. They were riding between the baggage car and the locomotive tender. R. B. Watson, acting chief of police of Madisonville, was at the railroad station when the train arrived and was standing on the west side of the track, the passenger platform being on the east side of the track. When the train arrived appellant and Sommers started to alight on the west side of the track but discovering the officer they crossed through the train and alighted on the east side. Watson started in pursuit of appellant and Sommers, who ran down Center street. When Watson had arrived within hailing distance he commanded them to halt, which they refused to do, and they continued to run, turning into an alley. The officer fired one shot from his pistol into the air, as he claims, but the appellant claims that this shot struck him in the leg. The appellant claims that he fired no shot but continued to run, passed out of the alley and was running down another street when he heard several shots in the alley through which he had just passed. He further claims that he left the city immediately and continued walking through the country until he was arrested on March 9 in Webster county. Watson testified that after he had fired one shot in the air appellant and Sommers each fired one shot at him and that he followed them through the alley to a point near a coal house, at which place he engaged in an exchange of shots with them. The officer had two guns and fired in all twelve shots. E. E. Samples, a deputy sheriff, and the deceased, also a deputy sheriff, who were at the depot and heard the shooting went to Watson's assistance. Watson is the only witness as to what occurred at the time Murphey was shot. He testified as follows:

"Q. Now show the jury how you came? A. I come across this lot here and they was about half way betwen Cowand's and the garage.

"Q. That vacant lot is known as the Odd Fellows' lot? A. Yes, sir; and I got out just in time to

see them turn in the alley and I throwed my gun once and shot.

"Q. You were seeking to make an arrest at that time? A. Yes, sir. They were along here (indicating) from the time I passed this opening; one of them shot at me from this corner (indicating) and I run from this corner, and one was standing right here, and he throwed his gun over his shoulder and I squatted down right here (indicating) at the northwest corner of a coal house, and this fellow commenced shooting at me from here.

"Q. Do you know which one that was? A. No, sir. This man here (indicating on map) was doing a good deal more shooting than this one. I heard one or two shots that sounded like it was on the inside of the house. Just as the train pulled out, they said, 'We will give up,' and I told them to come on around with their hands up, and they said 'You come around,' and I wasn't going to do that, so about that time I heard somebody running and Mr. Samples was coming in here (indicating) and I said, 'You go around that way and I will go this way,' and I lost Mr. Samples then, and the larger man it looked to me was standing here (indicating).

"Q. Where was the other one? A. I couldn't say.

"Q. And you were at this corner right here? A. Yes, sir. When I told Mr. Samples to go this way and I would go that way, he was standing in here next to the coal house.

"Q. The larger of the two negroes? A. Yes, sir; and he was standing in this position with his hand in this position (indicating) and he raised his hand and I shot at him twice and pulled the trigger the third time and the gun didn't go off.

"Q. Now at that time, up to that time had you seen Murphey? A. Mr. Murphey ran up just at that time—so I knocked him in the head, and Mr. Murphey was standing to my right, and he fell and then shot Mr. Murphey and turned and shot me. When Mr. Murphey fell I went to where he was standing and when he shot me I ran back and turned this way just in time to see a shot fire from this direction (indicating). This fellow jumped up and went out the alley and I turned and got one more shell and put in my

gun—I pulled my larger gun and put one shell in it and I come on out the alley by him and he turned and went north in front of the meat shop and I stopped and tried to get a shot at him but they was a crowd got in between us.

"Q. What sized guns did you have? A. One 44 and the other a 38.

"Q. Which pistol did you strike him with? A. The 38.

"Q. Which at that time was empty? A. Yes, sir.

"Q. Did you or not open it up and throw out the shells there? A. Not that one; I did the 44.

"Q. You say he came out and had his pistol in that position? A. Yes, sir. I told him to drop his gun and hold his hands up.

"Q. And about the time you struck him you noticed Mr. Murphey coming up there? A. Yes, sir.

"Q. And when he fell he turned and shot Murphey? A. Yes, sir."

One of the assignments of error is the admission of evidence of W. D. Hawkins, who had been a police officer in the city of Hopkinsville. Hawkins testified that he had known the appellant for fifteen years; that on the day the shooting occurred he was a fugitive from justice, having committed a felony in Christian county in 1924. The court admonished the jury that they should not consider the testimony of Hawkins as substantive testimony against the appellant as to his guilt or innocence of the crime for which he was being tried, but that it might be considered only for the purpose of furnishing the motive for his resisting arrest, if he did resist arrest.

It is insisted for the Commonwealth that this evidence was competent to show motive, and the case of Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116, is relied on. The general rule is that evidence tending to show that the accused has committed another crime independent of that for which he is being tried is inadmissible. There are several exceptions to this rule, however, one being that evidence of other crimes is admissible to prove motive. However, the crimes should be so connected in point of time or the circumstances should be such that it could be reasonably presumed that the crime for which the accused is being tried grew out of and resulted as a consequence of the crime sought to be proven.

The rule is thus stated in Romes v. Commonwealth, 164 Ky. 334, 175 S. W. 669:

> "Indeed, the rule that evidence of other crimes is not competent, except in a few cases, obtains everywhere. It has received the approval of all courts and all judges, and is so manifestly correct that it needs no argument to sustain it. Every person who is put upon his trial for an offense selected by the Commonwealth has the right to assume that he will be tried for the particular offense charged against him, and that his rights will not be prejudiced by evidence of other independent and disconnected acts of wrongdoing, for each of which he may be compelled to answer in a prosecution instituted for that purpose. There are, however, a few exceptions to this general rule applicable to cases in which it is necessary to establish identity, or guilty knowledge, or intent, or motive for the commission of the crime under trial, or when other offenses are so interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant and competent testimony, or when the independent offense was perpetrated to conceal the crime for which the accused is on trial."

And in Thomas v. Commonwealth, 185 Ky. 226, 214 S. W. 929, we said:

> "The general rule is that on the prosecution of a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime, wholly independent of that for which accused is being tried, is irrelevant and inadmissible. There are several well recognized exceptions to this rule, however, and these exceptions are founded on as much wisdom and justice as the rule itself. The general rule does not apply where the evidence of another crime tends directly to prove defendant's guilt of the crime charged. Evidence of other crimes is admissible to prove particular matters such as the identity of accused, also the motive, intention, or knowledge. Such evidence is likewise admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other."

In Music v. Commonwealth, *supra*, relied on by the Commonwealth to bring the complained of testimony of · Hawkins within one of the exceptions to the general rule, the defendant had committed a robbery. about thirty minutes before a peace officer attempted to arrest him. While resisting arrest he killed the peace officer and the attempted arrest followed so closely in time the commission of the crime of robbery that it could reasonably be presumed that the defendant knew the purpose for which the arrest was being made and, therefore, evidence of the crime of robbery that had been committed a few minutes before the commission of the offense for which he was being tried, was admissible to show motive.

In the instant case, however, the crime attempted to be proven had been committed· many months before in another county and there is no evidence tending to show that appellant was attempting to avoid arrest on account of the commission of the former crime. The evidence on the other hand shows that Watson was attempting to arrest appellant and Sommers for unlawfully riding on a passenger train. without having paid their fares and that appellant so understood the purpose of the attempted arrest. There was no immediate connection, either causal or in point of time, between the two crimes and evidence of the former crime cannot be held competent as in any way showing a motive for the offense charged. That being true the admission of the testimony of Hawkins showing that appellant had committed an- other felony was highly prejudicial to appellant's substantial rights.

On cross-examination, in answer to questions propounded by the attorney for the Commonwealth and without objection thereto, the appellant said that in 1924 he had shot his wife and a white man in Hopkinsville but that the shooting was accidental. This did not cure the error committed by the admission of Hawkins' testimony as appellant was not required to object to each and every question relative to a former offense after the court had ruled that the evidence was competent. Furthermore, the appellant had the right to explain the evidence that had been admitted over his objection.

The appellant objected to certain portions of the arguments before the jury of the county attorney and the Commonwealth's attorney. The county attorney in his argument said in part: "The accusing finger of this evi-

dence points unerringly to this defendant as the murderer of Enos Murphey. He had a motive for resisting arrest. We have shown that he had shot his wife and a white man in Hopkinsville and was then a fugitive from justice. Thus he was a professional criminal and he was ready to murder any officer who stood between him and 'liberty." This argument was based on the evidence that we have held was incompetent. The county attorney also in his argument gave a graphic description of the scene at the bedside of the deceased after the shooting occurred and of the scene at the funeral of the deceased.

The Commonwealth's attorney in his argument before the jury said in part: "If you gentlemen of the jury could have heard the weeping of these babies and Mrs. Murphey when they heard of what had happened and if you could have seen them standing by the bedside of their brave, dying father and husband in anguish and misery screaming and crying, you would have taken a grass rope and tied it around the copper neck of this defendant and hung him up to a tree."

The attorneys in describing the scenes at the bedside of the deceased and at the funeral were stating facts that did not appear in the record and which would not have been admissible as evidence upon any ground whatsoever. Such language is calculated to influence the passion and prejudice of the jury and to cause them to render a verdict which they might not otherwise do.

An attorney for the Commonwealth is an officer of the state and it is his duty to see that the legal rights of the accused as well as those of the Commonwealth are fully protected. He should not go outside of the record and comment on facts not introduced in evidence, nor should he make extravagant and reckless statements calculated to inflame the passion of the jury and prejudice them against the accused. In our opinion the arguments objected to were improper and were prejudicial to the rights of the accused.

The appellant also complains of instructions given by the trial court. The instruction on self-defense, being instruction No. 7, in effect told the jury that the officers were authorized to inflict death on appellant and Sommers if they were at the time trying to avoid being arrested. On another trial the words, "trying to avoid being arrested" will be omitted from the instruction. In

the same instruction the clause, "to avert the impending danger to either of said defendants, real or apparent," will be changed so as to read, "to avert the impending danger to either of the said defendants, real or to him reasonably apparent." As thus corrected the instructions properly.present the law of the case.

Appellant also complains that the trial court committed reversible error in failing to grant him a continuance and in refusing to permit the affidavit of what Lee Morrow would testify to be read in.evidence.

As we have concluded that the judgment must be reversed for other reasons it will not be necessary to discuss or determine either of these questions.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent herewith. The whole court sitting. ·