## Goff v. Commonwealth.

(Decided December 11, 1931.)

430

B. J. BETHURUM for appellant.

J. W. CAMMACK, Attorney General, GEO. H. MITCHELL, Assistant Attorney General, and J. S. SANDUSKY, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

On February 13, 1931, in a shooting affray, at a magistrate's court in Pulaski county, Hobart Goff and Oather Poynter, each shot and seriously wounded the other. Goff recovered, and Poynter died. Goff and his father were by indictment charged with murder, and, upon his separate trial, Hobart Goff was convicted of manslaughter, and his punishment fixed at four years in the penitentiary.

In the trial court, he urged eight grounds in support of his motion for a new trial; his motion was overruled, and he is now urging those eight grounds for a reversal. Seven of these we shall not discuss, nor will we discuss the facts or make any statement of them at all, lest, by so doing, we may detract from the importance of the one error for which this judgment is being reversed; to wit, for misconduct of the attorney for the commonwealth in his closing argument to the jury, in the course of which he said:

"I know you will object. (Referring to an objection made by attorney for defendant to certain remarks of the Commonwealth's Attorney in his closing argument.) You were born in the objective case. You have your stenographer here to take down my speech, making preparation for an appeal, which you know you will take, as you have no confidence in your case or his defense, and you are trying to get enough errors in the record to reverse this case when you take it to the Court of Appeals after your client is convicted. . . ."

"Judge (meaning Judge Bethurum, attorney for the defendant), why are you fighting so hard? I will tell you: Because of the large fee you are to receive, because you are hired and employed with a big, fat fee. You know according to the evidence

that the defendants are stock traders who are able to pay fat fees . . . and, gentlemen, all I ask of you, or at your hands, is the performance of men who have taken a solemn oath to perform a solemn duty and render a verdict that will be just, and may God, the God on the great white throne above, give you power, courage and manhood to return that kind of a verdict into this courtroom, and no other, and that kind of a verdict that will reflect credit to you, to your county, and to the state. I cannot believe that one of you would sit in the jury box and qualify and take oath that you have no bias or prejudice in this case, and would decide it according to law, and then go out and perpetrate a fraud upon the county and upon the state. If you were to, gentlemen, you would be like the sirens of old, who kissed and caressed their lovers with one hand and administered poison with the other; you would be a traitor to your country, if you were to be influenced, gentlemen, by politics, by religion, by creed, or anything else in rendering a verdict. Gentlemen, you would be in a class with Judas, who betrayed the Saviour for thirty pieces of silver, and with Esau who sold his birthright for a mess of pottage."

Of course this is not all he said, he said a great deal more which was objectionable and to which objections were made, but it would serve no useful purpose to quote it. This was more than enough to require a reversal of the judgment. The accused by counsel made objection to these remarks when made, and moved the court to discharge the jury and continue the case. An attorney for the commonwealth should never forget his high position; should never forget it is his duty to protect the innocent just as much as it is his duty to prosecute the guilty. He represents all the people of the commonwealth, including the defendant; he should in an honorable way use every power that he has, if convinced of the defendant's guilt, to secure his conviction, but should always remember he stands before the jury clad in the official raiment of the commonwealth, and should never become a partisan. See 22 R. C. L., p. 104, sec. 12, 18 C. J., p. 1015 and p. 1016.

The defendant has certain rights, among which is the right to be heard by himself and counsel. Ky. Constitution, sec. 11. This defendant chose for his counsel

Judge B. J. Bethurum, a man whose skill and learning is not unknown to us. It was the duty of the defendant to pay him for his services, but in the rendition of these services Judge Bethurum renders them as a sworn officer of the law, not as a hired representative; and if the defendant had been unable to employ counsel, and the court had appointed Judge Bethurum to represent him, it would have been his duty under such appointment and without fee or reward to represent the defendant just as ably and just as skillfully as if he had received a proper fee.

In each instance, his appearance on behalf of the defendant would be in his official capacity as one of the sworn officers of the court. Therefore the reference to his fee or to the ability of the defendant to pay a fee was improper. The defendant was charged with murder, and not with being wealthy, and no reference should have been made to his station in life. Wallace v. Com., 229 Ky. 776, 18 S. W. (2d) 290.

It was the duty of Judge Bethurum as a sworn officer of the court to use every honorable effort to secure for the defendant a fair trial, and, if his experience told him it was advisable to have a stenographer take down the argument of the attorney for the commonwealth, he not only had a right so to do, but it was his duty, and the reference thereto was highly improper. The tendency of the other remark was to induce the jurors to believe that an acquittal of the defendant would brand them with infamy, and class them as traitors.

It was the duty of these jurors to give respectful hearing and attention to this argument, and if they did they could not avoid being influenced thereby, and, if they were, then they were by it led to believe that anything less than a conviction of the defendant would be a grave dereliction on their part. It is never proper to admonish a jury that, if it does not convict, the members of the jury violate the oath which they have taken. Wallace v. Com., 229 Ky. 776, 18 S. W. (2d) 290.

His argument in full is tendered us by the attorney for the commonwealth, and he insists he did not say all the things it is charged he said, and that what he said is not so bad when his speech is read as a whole; but we did not hear the argument, and we can consider only those things which the judge in the bill of exceptions certifies that he said.

We have in reversing judgments so often and so forcibly condemned arguments such as this that we see no good reason for repeating the things we have said, but will content ourselves by citing some of the cases in which our condemnations may be found. Gilbert v. Com., 106 Ky. 919, 51 S. W. 804, 21 Ky. Law Rep. 544; Jones v. Com., 213 Ky. 356, 281 S. W. 164; Mount v. Com., 120 Ky. 398, 86 S. W. 707, 27 Ky. Law Rep. 788; Baker v. Com., 106 Ky. 212, 50 S. W. 54, 20 Ky. Law Rep. 1778; Little v. Com., 221 Ky. 696, 299 S. W. 563; Napier v. Com., 215 Ky. 847, 287 S. W. 21; Howerton v. Com., 129 Ky. 482, 112 S. W. 606, 33 Ky. Law Rep. 1008; Johnson v. Com., 217 Ky. 565, 290 S. W. 325; Slaughter v. Com., 149 Ky. 5, 147 S. W. 751; Linde v. Com., 208 Ky. 98, 270 S. W. 451; Howard v. Com., 110 Ky. 356, 61 S. W. 756, 22 Ky. Law Rep. 1845.

Generally, the following things which appeared in this argument are regarded as improper if referred to by an attorney for the commonwealth in his closing argument: To state the defendant has a right to appeal. 16 C. J., p. 907, sec. 2254. To refer to the wealth and social influence of the accused as contrasted with the poverty of the person injured. 16 C. J., p. 909, sec. 2258, Wallace v. Com., 229 Ky. 776, 18 S. W. (2d) 290. To state or contend that a verdict other than that sought by the attorney making the argument will subject the jury to scorn or contempt. 2 R. C. L., p. 416, sec. 14.

When the defendant objected to this remark first quoted, the court said: "It doesn't make any difference about whether or not the case will be appealed, the jury will decide the case solely and alone upon the facts and the law without regard to extraneous influence."

That was not enough. We held a similar admonition to be insufficient in Gilbert v. Com., 106 Ky. 919, 51 S. W. 804, 21 Ky. Law Rep. 544. We have examined the copy tendered us of what the attorney for the commonwealth says he said in his argument; it occupies 19 pages of the transcript. There are 574 lines of it to 159 of which objections were interposed. It is interesting to read this. Of the 20 objections interposed, 18 of them appear in the first five pages. The imagination shows us clearly just what occurred. Judge Bethurum endeavored to protect his client's rights and sought to keep this argument within proper limits, but, as objection after objection made by him was fruitless, he saw that

by his very efforts to protect his client he was perhaps doing him an injury in the minds of the jurors, and he quit. It is just such situations as this that cause courts to write things like these.

In N. Y. C. R. Co. v. Johnson, 279 U. S. 310, 49 S. Ct. 300, 303, 73 L. Ed. 706, the U. S. Supreme Court said: "The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice. See Union Pac. Ry. Co. v. Field (C. C. A.), 137 F. 14, 15; Brown v. Swineford, 44 Wis. 282, 293 (28 Am. Rep. 582). Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error. Brasfield v. United States, 272 U. S. 448, 450, 47 S. Ct. 135 (71 L. Ed. 345)."

In Owensboro Shovel & T. Co. v. Moore, 154 Ky. 431, 157 S. W. 1121, 1123, this court said: "When a lawyer makes a statement of fact wholly unsupported by the record, the trial court should, without waiting for objection to be made, promptly reprimand the lawyer and instruct the jury to disregard the statement; and where he regards it of such a prejudicial nature that it may improperly influence the jury he should set aside any verdict obtained in favor of counsel so offending."

Again, in Gunterman v. Cleaver, 204 Ky. 62, 263 S. W. 683, 685, we said: "It is the duty of the presiding judges of circuit courts, in jury trials, upon their own motion to interfere in such cases and to stop such argument."

Those were extreme cases; this is an extreme case; such cases cause extreme things to be said, but if judges do not maintain control in the tribunals over which it is their duty to preside, it may become necessary to extend these rules. We said in Clem v. Com., 213 Ky. 265, 280 S. W. 1104, 1105, "the commonwealth is not in pursuit of victims, but desires to inflict punishment only in a legal and constitutional way upon the guilty."

The laws should be enforced, but that should be accomplished in an orderly way, and in reversing a judgment in Baker v. Com., 106 Ky. 212, 50 S. W. 54, 58, 20 Ky. Law Rep. 1778, which had been obtained after a resort by the commonwealth's attorney to tactics similar

to those used here, we quoted this from the Supreme Court of Michigan. Hurd v. People, 25 Mich. 405: "However strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet justice so attained is unjust, and dangerous to the whole community."

Judgment reversed; other questions reserved.