## Quinlan v. Commonwealth.

(Decided September 25, 1912.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Instruction—Refusal to Give Peremptory Instruction—When Not Error—Submission to Jury.—The refusal of the trial court to give a peremptory instruction directing appellant's acquittal, was not error; as there was evidence tending to show him a guilty participant in the larceny charged in the indictment, which authorized the submission of the case to the jury.

2. New Trial—Failure to Exercise Diligence.—The refusal of the court to grant a new trial on the ground of newly discovered evidence, was not error, as it is not apparent that the newly discovered evidence would, upon another trial, have a preponderating influence upon the verdict of the jury. It is apparent that reasonable diligence on the part of the appellant would have enabled him to obtain the alleged new evidence at the trial in which he was convicted.

HENRY W. SANDERS, O'DOHERTY & YONTS and CLEM W. HUGGINS for appellant.

JAMES GARNETT, Attorney General, CHARLES H. MORRIS, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On December 5, 1909, the residence of Mrs. Leavell McCampbell, in the city of Louisville, was entered at night and a lot of silverware of the value of $250.00, the property of Mrs. McCampbell, stolen therefrom. Thereafter the greater part of the silver, much battered and defaced, was found in the possession of, and recovered from Meyers, a pawn-broker, to whom it had been first pawned and then sold. Appellant, Clifford Quinlan and one W. J. Willis, were jointly indicted for the theft of this property, the charge being grand larceny.

We are not advised as to whether or not Willis has been tried, but appellant was tried and convicted and

his punishment fixed by the verdict of the jury at confinement in the penitentiary for the term of three years. As the crime charged was committed before the present indeterminate punishment statute became a law, appellant's punishment was properly fixed by the jury as provided by the statute then in force. He complains of the judgment, and of the refusal of the circuit court to grant him a new trial. Hence this appeal.

His chief complaint is that the evidence did not warrant his conviction and that the court should have given a peremptory instruction directing his acquittal by the jury. The evidence upon which appellant was convicted was, in brief, that the silver exhibited on the trial as the subject of the larceny, was fully identified as her property by the husband of Mrs. McCampbell, and by her testimony given on appellant's examining trial, which was reproduced through the stenographic report of the evidence, officially taken and transcribed by the court stenographer on that trial; she having died between the time of the examining trial and the trial under the indictment in the circuit court. Although the articles of silverware had been somewhat defaced and the initials of the owner attempted to be removed therefrom, its identification as the property of Mrs. McCampbell seemed to have been complete, and it appeared from the testimony of Aaron Meyers, the pawn broker, that he received in pawn the identified articles from Willis, December 18, 1909, at which time he let Willis have $5.00 upon the articles, but that afterwards, about December 18, Willis came back to his pawn shop with appellant; that appellant then presented the pawn ticket which Meyers had previously given to Willis, and offered to sell the ticket to Meyers, claiming that the articles for which he held the ticket belonged to him. Thereupon, Meyers bought the ticket from him for $1.00 in addition to the $5.00, previously advanced to Willis when the silverware was pawned, and appellant received the $1.00 and delivered the ticket to Meyers. Meyers further testified that when he received the silver it was in the battered condition it bore at the time of the trial, and that he kept it in his store for six months, and exhibited it to the police authorities frequently to ascertain whether or not it was stolen; that later his wife saw the silver and admired it, and that he, Meyers, sent it out to his home, where it was used by his wife. While the

silver was at Meyers' home, the husband of Mrs. Mc-Campbell went there, saw and identified it.

It is very apparent from the evidence that all the silver stolen from Mrs. McCampbell was not sold to Meyers, and that such of it as he purchased did not exceed $50.00 in value; whereas the value of all that was stolen was as much as $250.00. The remainder of the silver was, however, found by the husband of Mrs. Mc-Campbell at Tenth and Jefferson streets, where appellant told Policeman Scanlon it would be found. The witnesses, Oakleaf and Hudson, the latter a saloon-keeper, and two policemen, saw appellant with silverware, which he tried to sell Hudson.

Appellant, on the other hand, in giving his testimony, denied stealing the silver, and also denied that he sold the pawn ticket to Meyers; and while admitting that Oakleaf and the two policemen saw him with silverware, which he tried to sell to Hudson, it was, as he claimed, the property of his wife which he took while intoxicated and without her knowledge for the purpose of selling it. Hudson, upon seeing the silverware stolen from Mrs. McCampbell, failed to identify it as the same appellant offered to sell him, and other witnesses testifying for appellant stated that his father-in-law took from him the silverware, which appellant tried to sell Hudson, and returned it to his wife.

We think it fairly manifest from the evidence that the silverware which appellant tried to sell Hudson was not Mrs. McCampbell's, but belonged to his (appellant's) wife; it is, however, very manifest from the evidence that this silverware was taken from him by his father-in-law and returned to his wife some time before he sold the pawn ticket to Meyers and claimed ownership of the silver of Mrs. McCampbell, which Willis had theretofore pawned to Meyers. It appears from the evidence, therefore, that the silver belonging to his wife was in her possession at the time of the sale of the pawn ticket by appellant to Meyers, and when he asserted ownership of the silver of Mrs. McCampbell.

So, notwithstanding the evidence by which appellant attempted to show that the only silver he had in his possession was that of his wife, there were at least three material facts brought out by the evidence of the Commonwealth, which conduced to prove his guilt under the indictment, viz.:

First: That he claimed to own and sold the ticket to Meyers, which evidenced the latter's possession of Mrs. McCampbell's silver; second: that he also claimed to be the owner of the silver; third: that the remainder of Mrs. McCampbell's silver was recovered where he informed Policeman Scanlon it could be found. Proof of these facts authorized the submission of the case upon all the evidence to the jury, and we are unable to say the verdict is not supported by evidence, or even that it is flagrantly against the evidence.

Appellant also complains of the admission of incompetent evidence, consisting of the testimony of Oakleaf, Hudson, the policeman and others, with respect to his possession of the silverware belonging to his wife and his attempts to sell it. We find no reason for holding this evidence incompetent, and the fact that it was his wife's silver was, in the main, brought out by the cross-examination made of the witnesses by appellant's counsel; besides, we do not find that any of this evidence was objected to by him, or that any exception was taken to the rulings of the court in admitting it.

He also insists that the trial court erred in allowing proof of the statements made by Mrs. McCampbell on appellant's preliminary or examining trial. It was in proof and not disputed, that she was dead at the time of the trial in the circuit court, and that she had testified on the examining trial; and the fact that her testimony was correctly taken down and transcribed by the official stenographer of the court at the time it was given was shown by the testimony of the latter when it was read to the jury. There was, therefore, no error in the admission of this testimony. We have repeatedly held that the transcript of the evidence of a deceased witness, testifying at a former trial, may be proved by the official stenographer and read by him as evidence, when he testifies that the testimony was taken down by him correctly and accurately transcribed. Austin v. The Commonwealth, 124 Ky., 55; Moore v. Commonwealth, 143 Ky., 405.

Objection seems to have been made to the instructions given on the trial, but it is not apparent from the brief of appellant's counsel that any serious complaint is now made of them, and we deem it sufficient to say that they present with unusual brevity and clearness all the law of the case. It is earnestly contended by

counsel for appellant that the verdict was in some sort coerced from the jury by an alleged improper admonition which the court orally gave them, after they had had the case under submission for several hours without returning a verdict. The admonition referred to was as follows:

"In order to dispose of a case of this kind, it is necessary for twelve jurors to concur in a verdict. That does not necessarily mean that they should all view the case alike at the outset, but the law contemplates that jurors, when they take a case under advisement, will discuss it among themselves, and if they are not all of the same mind on first beginning the consideration of the case, that they will exchange views in a fair way in an effort to arrive at a verdict. While every man should act conscientiously in the matter, he should also recognize the fact that other gentlemen's views may be correct, and if his should be erroneous he should give his reasons for his views. Each of you have that privilege, and after you have in this way among yourselves made an effort to arrive at some common conclusion that would be a fair disposition of the case, there ought to be no difficulty about your agreeing on a verdict. This is the way the law contemplates a verdict should be reached. Men are different and have different ideas. All hear the evidence, and by discussing among themselves and an exchange of views, that view which represents nearest the conclusion of all the jurors should be nearest to the jury's verdict. I want to ask you, gentlemen, in this spirit to go to a further consideration of this case, and I feel assured that you will have no difficulty in reaching a conclusion in which all of you will concur."

There is nothing in this statement which amounted to an attempt to coerce the verdict or an intimation as to what the verdict should be. In our opinion it contained much wholesome advice which the jury could well afford to follow, and in no way could it have improperly influenced the jury in the verdict returned. In commenting in Sandifer v. Commonwealth, 143 Ky., 655, upon a somewhat similar statement made by the trial judge, we said:

"From a consideration of the remarks of the judge we do not understand that he attempted to coerce the jury into making a verdict, and certainly he did not intimate in any way whether their finding should be

guilty or not guilty. In substance, he told them he would appreciate it if they would make a verdict, and asked them to do so. In saying this much, we do not think he exceeded the limits of propriety to an extent that would authorize us to say his conduct was reversible error, although the words, 'I want you to decide this case for me,' might well have been omitted. * * * People v. Sheldon, 150 N. Y., 268; City of Covington v. Bostwick, 26 R., 780; Randolph v. Lampkins, 90 Ky., 551.''

We are unable to say that there was anything objectionable in the statement of the judge complained of.

Finally, it is also appellant's contention that he was entitled to a new trial on the ground of newly discovered evidence, consisting of facts set out in certain affidavits, to which it is claimed Dr. Frank Melton, appellant's physician, and Mrs. Mary Hampton, his grandmother, would testify in his behalf upon another trial. The testimony in question is to the effect that appellant was confined to his room or bed by serious illness for several weeks before and at the time of the commission of the larceny charged in the indictment. It is doubtful whether this testimony would exercise a preponderating influence upon the verdict of the jury on another trial; but, aside from this consideration, it is manifest that due diligence on the part of the appellant would have enabled him to produce the witnesses in question and obtain the benefit of their testimony on the trial which resulted in his conviction. As one of these witnesses was a near relative of the appellant and the other his family physician, it is patent that he knew at and before his trial of their possession of the facts with respect to his illness, to which the affidavits disclose they would testify. The lack of diligence on appellant's part being apparent, we will not reverse the judgment because of the newly discovered evidence. Wilson v. Commonwealth, 141 Ky., 310; Hayes v. Commonwealth, 140 Ky., 185.

A careful consideration of the record before us convinces us that no sufficient cause has been shown for disturbing the verdict, wherefore the judgment is affirmed.