## Clair v. Commonwealth.

(Decided September 19, 1913).

### Appeal from Powell Circuit Court.

1. **New Trial—Absence of Counsel—Continuance.**—The refusal of the circuit court to grant the defendant a new trial on the ground of the absence from the trial of counsel first employed by him, was not error, where there was no complaint of the absence of such counsel when or before the trial began, nor motion made for continuance because of their absence.

2. **New Trial—Newly Discovered Evidence.**—A new trial on the ground of newly discovered evidence was properly refused when it was apparent to the court from the record that the witnesses, by whom defendant claimed such evidence would be furnished, were

in attendance at the trial, after being recognized at the previous term of court to appear and testify in his behalf.

3. New Trial—Homicide—Absence of Witnesses.—It was, however, error for the court to refuse the defendant a new trial on account of the absence of a witness, for whom an attachment had, at the previous term, been awarded because of his failure to attend. court in obedience to a subpoena served upon him; it being made to appear, by the defendant's affidavit, that the testimony of such witness would have corroborated that of the defendant as to certain facts unknown to any other witness, which occurred immediately before the homicide and which conduced to prove that deceased would then have killed the defendant but for the interference of the witness.

JOHN D. ATKINSON for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant was tried and convicted of voluntary manslaughter in the court below, under an indictment charging him with the murder of Jack (Bummer) Spicer. The homicide occurred in Breathitt County, but, on application of the Commonwealth's attorney, the venue was changed to Powell County where the trial took place. Three grounds were relied on by appellant for a new trial, and are now urged for a reversal of the judgment, viz.: First, absence, at the time of the trial, of counsel whom he had first employed in his defense; second, the refusal of the circuit court to grant him a continuance, on account of the absence of one of his material witnesses; and third, newly discovered evidence.

The complaint presented by the first ground is wholly without merit. It appears from the record that appellant, before the case was transferred from the Breathitt to the Powell Circuit Court, had employed Messrs. Adams, Holiday, and Redwine, of the Breathitt bar, to defend him, and that they were not present at the trial of his case in the latter court. The record, however, does not disclose why they were absent, nor does it show that appellant made any complaint of their absence, or that he asked a continuance of the case because thereof. But, it does show that shortly before the term of the Powell Circuit Court at which he was tried he employed C. F. Spencer, of the Clark County bar, and later employed J. D. Atkinson, of the Powell County bar, to make his

defense, and that he was represented throughout the trial by both Spencer and Atkinson.

If appellant had been of the opinion that he could not safely go into the trial without the presence of Messrs. Adams, Holiday and Redwine, he should have made that fact known to the court when the case was called for trial and asked a continuance on account of their absence. Having failed to urge his complaint of the absence of counsel named at the proper time, such complaint could not be considered by the court as a ground for a new trial. Cook v. Commonwealth, 114 Ky., 586; Stephens v. Commonwealth, 9 Rep., 742; Brown v. Commonwealth, 7 Rep., 451.

Appellant's second contention presents a more serious question and, in order to intelligently pass upon it, consideration of the evidence introduced on the trial is here necessary. It, in brief, discloses the following state of facts: On Sunday, January 7, 1912, appellant went to the store of Henry Noble on Wolf creek, in Breathitt County, to make a settlement of some business he had with Noble. He there met the deceased, Jack Spicer, and a number of other persons. Spicer, who was partially intoxicated and armed with a pistol, encountered appellant in front of the store and, without provocation, cocked the pistol and presented it at him, remarking at the time, "I am the worst damned son of a b——h that ever hit this county." Upon seeing the pistol thus pointed at him, appellant said to Spicer, "Don't do that, Bummer. What do you want to kill me for, I am your friend." It does not appear that Spicer made any reply, but, at that juncture, William Moore, who was standing near, caught Spicer's arm and shoved the pistol away, so that it no longer pointed at appellant. Appellant then went into the store and requested William Allen, a deputy sheriff present, to go to Spicer and disarm him, saying at the time, "He cocked and presented his pistol on me out at the door and tried to kill me. If he does that any more, I will shoot his heart out." Allen refused to perform the service requested of him by appellant, giving as a reason for such refusal that, as he and Spicer were not on friendly terms, the latter would shoot him if he attempted to disarm him.

Down to this point there is no controversy as to what occurred. The facts, thus far stated, were established by the testimony of appellant alone, as William Moore was the only other person with appellant and Spicer in

front of the store, and Moore was not present at the trial. As to what occurred later in the store and at the time of the homicide, numerous witnesses gave their testimony. That of the Commonwealth, furnished by Henry Noble and Bud Noble, was to the effect that Spicer, when he walked into the store, had his pistol in his right hand, holding it by the muzzle; that he presented the handle to Henry Noble and said to him, "Henry, come and get her," and that, as he thus held the pistol, appellant jumped at Spicer, caught and held him by the hand, drew a pistol and fired five shots at him, the last one striking Spicer in the back of the head after he fell to the floor.

The testimony of appellant, and at least four other witnesses, as to what occurred in the store and at the time of the shooting, radically differs from that of the two witnesses for the Commonwealth. It was, in substance, that appellant, while standing in the door immediately before Spicer entered the store, was cursed and threatened by the latter and ordered by him to stand back out of the door; that appellant, after remonstrating with Spicer, left the door and stepped back a few feet therefrom, whereupon Spicer entered the store, with pistol in hand, the muzzle of which he pointed at appellant as if to shoot him, and, while in this position, his hand was grabbed by appellant, and while holding him in this position appellant shot and killed him, in the manner already indicated.

It may well be said that, while the testimony of the two witnesses for the Commonwealth conduced to prove that the shooting of Spicer by appellant was inexcusable, appellant's testimony, and that of the several witnesses introduced in his behalf, as strongly conduced to prove that, in shooting Spicer, he acted in his necessary self defense. In view of this situation, the testimony of William Moore, the witness on account of whose absence appellant asked a continuance of his case, was very material and important to his defense. If, as stated in the affidavit for the continuance filed by appellant, Moore would have testified as to what occurred between appellant and Spicer in front of the store as the facts were related by appellant in his testimony, the corroboration thereby given the testimony of the latter would, in all probability, have had great weight with the jury. The facts as to what occurred in front of the store were known only to appellant and Moore. As the other wit-

nesses were all, at the time, in the store, they did not profess to have heard or seen what passed between appellant and Spicer before the latter entered the store, and the jury, by reason of the manifest desire of appellant to escape conviction for the killing of Spicer, were doubtless disposed to regard, with suspicion, his unsupported testimony; whereas, if it could have been corroborated by that of Moore, the inducement to them to have accepted it as a true statement of the facts would have been calculated to have caused a different verdict. In order to realize the importance to appellant of Moore's corroboration of his statement as to what occurred in front of the store, it may be remarked that it would have served to show the violent character and maliciousness of Spicer, the condition of his mind immediately preceding the killing, and that the motive with which he thereafter entered the store was to follow up and bring on a difficulty with appellant, for the purpose of inflicting upon him bodily harm or killing him; also that appellant had attempted to avoid a difficulty with him.

Indeed, the materiality of Moore's testimony is not seriously denied by counsel for the Commonwealth, but it is argued by them that the affidavit for the continuance fails to show that appellant used proper diligence to procure the attendance and testimony of Moore at the trial. This argument is based wholly on the fact that, as at the previous term of the court, attachments for Moore had, by order of the court, been directed to be issued for the trial term to both Breathitt and Owsley Counties, the failure of appellant to have one issued and sent to Owsley County showed a want of diligence on his part that justified the court's refusal of the continuance. The affidavit states that Moore's residence is in Breathitt County and that the attachment ordered for that county by the court, was, in due time, issued and sent to the sheriff of the county, by whom it was returned unexecuted without giving any reason for his failure to execute it. It does not appear from the record that appellant knew that the order of the court required the issuance of an attachment for Moore to Owsley County, or that Moore had changed his residence to that county, if such was the fact, and he denied such knowledge.

We find nothing in the record to justify the charge of lack of diligence on the part of appellant in attempt-

ing to secure the testimony of Moore, and, in view of the statements of the affidavit and the absence of a showing that he asked for, or knew, of the order for an attachment to Owsley County for Moore, or knew of his removal from Breathitt to Owsley County, we will not indulge the presumption of negligence attributed to him by the trial court. In this connection, it should not be overlooked that appellant, previous to his trial, was confined in the jail of a county other than that in which the trial was had, and that the only one of his counsel residing in Powell County was not employed by him until after the beginning of the term of court at which the trial occurred. It cannot, therefore, be said that appellant was so situated as to employ the customary facilities for procuring the attendance of witnesses. All the circumstances considered, we are of opinion that he was entitled to the continuance asked, and that the refusal of the court to grant it was an abuse of discretion, and, therefore, error.

· If the court had permitted to be read as evidence, so much of appellant's affidavit as purports to state the facts to which, it is therein claimed, Moore would, if present, have testified, we would be unwilling to hold that the refusal of the continuance was error; but, as this was refused, he should have another trial, with opportunity to procure thereat, the testimony of Moore. Mount v. Commonwealth, 120 Ky., 398; Davis v. Commonwealth, 121 S. W., 429.

Appellant's complaint of the refusal of the court to grant him a new tiral, on the ground of newly discovered evidence, cannot be sustained. It was claimed that the newly discovered evidence would be furnished by John Deaton and Brownlow Deaton. It would be useless to discuss the evidence it is said these witnesses would produce, as it is patent that by even slight diligence, it could have been discovered by appellant in ample time for use on his trial. With reference to these witnesses and what they would testify, the opinion of the circuit judge, delivered on the motion for a new trial, in part, states: "The record in this case shows that on the 26th day of November, 1912, both the John Deaton and Brownlow Deaton mentioned in the defendant's motion were in attendance as witnesses for defendant, and were recognized to appear at this term as witnesses for defendant, but to be paid by the Commonwealth. The record also shows that those two witnesses were pres-

ent at this term of court when the defendant was tried, and were allowed their claims to be paid by the Commonwealth." In view of the foregoing facts, which are fully sustained by the record as stated in the opinion, it is absurd for appellant to claim that he had no opportunity, until after his trial, to learn from these witnesses the facts in their possession with respect to the homicide. If they really knew, and would have testified to, the facts attributed to them on the hearing of the motion for a new trial, a single brief conversation with them by appellant, or his counsel, while they were attending his trial, or at the previous term when they were recognized as witnesses for him, would readily have elicited information of such facts and enabled appellant to use them upon the trial. Ellis v. Commonwealth, 146 Ky., 715.

No complaint is made of the instructions. They correctly state the law applicable to appellant's case.

Because of the error committed by the trial court in refusing the continuance asked by appellant, the judgment is reversed and case remanded for a new trial consistent with the opinion.