## Dunn v. Commonwealth.

(Decided February 24, 1922.)

### Appeal from Lincoln Circuit Court.

1. Rape—Carnal Knowledge—Instructions.—The offense of carnally knowing a female under the age of sixteen years, as denounced by section 1155 of the statutes, is a degree of and a lesser offense than carnally knowing a female above twelve years of age against her will or consent or by force, as denounced by section 1154 of the statutes, and where the evidence conclusively shows that the female was under sixteen years of age at the time, or where the question of her age is in dispute, and there is sufficient testimony to support a verdict that she was under that age, it is the duty of the court in the trial of an indictment under section 1154 to instruct the jury upon the offense denounced by section 1155; and in such a case it was not error to give the latter instruction although there was no evidence of actual consent.

2. Criminal Law—Argument and Conduct of Counsel.—It is not error for the Commonwealth's attorney to comment before the jury upon the fact that a confederate of defendant had not testified "nor was he here," although there was no evidence to show that he was absent, since the material fact was that he failed to testify.

3. Criminal Law—Newly Discovered Evidence—Impeachment.—Newly discovered evidence, in order to be available, must ordinarily be more than cumulative or impeaching, and in any event due

diligence to discover and obtain it must be shown; but no such diligence appears when it was shown that the witness whose testimony is sought was present at the trial, and especially so if he testified in the case in behalf of the party seeking the new trial.

JOHN W. RAWLINGS and J. S. OWSLEY for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Charlie Dunn, was indicted in the Lincoln circuit court for carnally knowing Irene Hamner, a female above the age of twelve years and under the age of sixteen years, against her will or consent and by force, and upon the trial he was convicted and his punishment fixed at ten years' confinement in the penitetiary. His motion for a new trial was overruled and he has appealed, and his counsel insist for reversal that, (1), the verdict is flagrantly against the evidence; (2), error of the court in instructing the jury; (3), misconduct of counsel for the Commonwealth in his argument to the jury, and (4), newly discovered evidence material to his defense.

The Commonwealth introduced the prosecutrix, who testified that she was just past fourteen years of age, and that on the evening of June 11, 1921, she went from her home in Shelby City, Ky., to Stanford in an automobile with Stigall Sloan and went to the home of a Mr. Ball. That about ten o'clock that night they and defendant left there for the home of the witness and went a roundabout way, and when near the Molly Hill place both Sloan and defendant committed the acts denounced by section 1154 of the statutes, under which the indictment was found and that she was forced to consent by defendant pointing a pistol at her, and afterwards she was taken near the residence of a Mr. Matherly, which was located in Junction City and was there put out of the automobile when defendant and Sloan left her at about twelve o'clock at night, and she went into the house of Matherly and stayed there until the afternoon of the next day when her brother came for her. Her testimony is corroborated by Mr. Matherly and his wife, who say that she came into their house at about the hour she stated and was crying and very nervous. Mr. Matherly also testified that on the next day he saw Sloan and defendant in an automobile, and asked them, "Why did you mistreat that girl?" and that defendant answered, "What in the hell is that to you?

What is that your business?'' but that he denied having mistreated her. The father of the prosecutrix testified that he saw Sloan and defendant the next day, which was Sunday, in a car and said to them, "Gentlemen, you must tell me where my daughter is," and further stated to them that some one would suffer or die "on account of this if the girl was mistreated or could not be found." He said that the two looked at each other several times before any answer was given, and finally Sloan told him that the girl was at the home of Matherly, which was the first information witness had as to the whereabouts of his daughter.

Sloan was not introduced as a witness, and defendant did not deny being in the automobile with him and the prosecutrix on the occasion in question, or deny stopping at the Hill place, but he stated that the stop there was for the purpose of getting water for the engine of the automobile, which was done, and that it was about twenty-five (25) yards from the house and that he did not do any of the acts of which he is accused. He admitted, however, putting the girl out at Matherly's, but gave no explanation therefor, nor did he deny her testimony as to the reason why that was done. He admitted having conversed on the following day with both the father of prosecutrix and Mr. Matherly, but denied the conversations to which they testified. The girl, her mother, and perhaps other witnesses, testified that her menstruation period was not on, but other witnesses testified to the contrary, and that they saw blood on her clothing on the afternoon before she was taken to Stanford at night. A number of witnesses testified to the bad reputation of the prosecutrix for both morality and truth and veracity, while others sustained her reputation for each of those characteristics. Ed Kinley, a colored man, who lived at the Molly Hill place, testified that the automobile on the night in question stopped about forty (40) yards from the house and that the defendant came into the yard and got two buckets of water which he put into the engine and that in about five minutes thereafter the machine went away; and that he saw no one but the defendant, not even the prosecutrix, nor did he remember whether the curtains were on or off the car. He did not testify whether he saw or did not see any of the acts testified to by the prosecuting witness. The above is the substance of the testimony, and there is absolutely no room for the contention that

the verdict is flagrantly against the evidence. If, however, it was established beyond controversy that the reputation of the prosecuting witness for virtue was bad, it would not follow that the offense of rape could not be or was not committed upon her, though she was above the age of sixteen years, and that fact could have no bearing upon the defendant's innocence of the crime of carnally knowing a female under sixteen years of age as denounced by section 1155 of the statutes. Ground (1), therefore, must be overruled.

The only complaint made under ground (2), is that the court erred in giving to the jury instruction No. 2, which authorized them to find the defendant guilty of the offense denounced by section 1155 of the statutes (commonly known as the age of consent statute) if they believed him guilty of the acts denounced in that statute, which is a degree of and a lesser offense than the one for which he was indicted, as was held by this court in the cases of Fenston v. Commonwealth, 82 Ky. 549; Nider v. Commonwealth, 140 Ky. 684, and Eads v. Commonwealth, 162 Ky. 89, and it is because of consent and the absence of force that the offense is a lesser one. Frierson v. Commonwealth, 175 Ky. 684. Just why it was error to give that instruction is not made clear to us by counsel. In an indefinite way it is insisted that there was no evidence that the intercourse, if it occurred, was with the consent of the prosecuting witness, and without such testimony it was error to give it, and because thereof some of the jurors may have concluded that defendant was not guilty of the crime for which he was indicted (a forcible one) but that they were willing to convict him of committing the act though with the consent of the prosecutrix, although she was at the time under sixteen years of age. The logic of this reasoning does not appeal to us, for, in the eyes of the law, the offense was committed constructively without her consent (she being under sixteen years of age) although she actually consented thereto. Moreover, if the conclusion of the jury had been reached in the manner surmised by counsel it could not in the least prejudice the rights of defendant, since he was given the minimum punishment for violating the age of consent statute, as well as the minimum punishment for violating the statute under which he was indicted, and, manifestly, under such circumstances, he has no ground for complaint. On the contrary, the more plausible

theory would seem to be that the giving of the complained of instruction operated to the benefit of defendant, since without it the jury could have imprisoned him for not less than ten nor more that twenty years, or inflicted upon him the death penalty; while under that instruction they could only punish him by imprisonment within the same minimum and maximum limits. Indeed, if the court had failed to give the instruction complained of and defendant had received the death penalty, and was here now seeking a reversal because of such failure, it would be our bounden duty to reverse the judgment because of failure to give to the jury the whole law of the case, since, as we have seen, the offense submitted in that instruction is a degree of and a lesser one than that for which defendant was indicted. When the jury reached the conclusion that defendant was guilty of committing the act the least punishment they could inflict, whether it was done with or without force, was ten years' imprisonment in the penitentiary and we have seen that the evidence was sufficient to authorize and to uphold that verdict. It is perfectly clear, therefore, that in no view of the case can it be said that any rights of the defendant were prejudiced by giving the instruction complained of. But the direct question was before us in the Eads case, *supra,* and the same complaint was made there as is made here, and this court overruled it and held that the court properly instructed the jury under section 1155 of the statutes. It is therefore manifest that this ground is without merit.

The Commonwealth's attorney, in arguing the case before the jury, said: "Stigall Sloan, the man who was with Charlie Dunn, is not present in the court and is gone and not here." It is seriously insisted that the statement that Sloan "is gone and not here," when there was no evidence as to whether he was present or absent, was greatly prejudicial; but we cannot agree with the contention. The material fact was, not whether Sloan was present or absent, but it was the fact that he did not testify in the case as a witness for the defendant. If he was present and did not testify, that fact would be a circumstance more detrimental to defendant than if he had been a fugitive from justice and therefore absent. If he was absent, defendant had the right to make an affidavit as to what his testimony would be and thereby get the benefit of it, although unable to secure his presence. Sloan was not indicted with the defendant, and so far as

the record shows there was no excuse for his failure to testify, and that fact was a legitimate subject of comment by the Commonwealth's attorney. In no view of the case can this complaint be regarded as error.

The alleged newly discovered testimony, relied on in ground (4), is that of Bowen Adams, who, it is claimed, would testify that Leonard Ball, a witness for the Commonwealth, told Adams that the prosecutrix on the occasion in question was suffering from her monthly attacks, which fact was testified to by other witnesses, and the discovered testimony, if otherwise competent, would be only cumulative. However, it was insufficient, as newly discovered evidence, because it was only impeaching testimony for which a new trial would not ordinarily be granted on this ground. But, independently of those reasons, the witness Adams was introduced by the defendant and testified in his behalf at the trial, and the slightest diligence would have discovered his testimony now relied on to obtain a new trial. In 16 Corpus Juris, 1187, the text says: "Generally newly discovered evidence is not deemed to include testimony of a witness who was examined at the trial, or who was present and might have been examined. The rule of due diligence renders such evidence unavailable," and on page 1193 it is said: "Denials of motions for new trials on the ground of newly discovered evidence are generally based upon lack of diligence to procure and produce evidence known to defendant prior to the trial; or upon neglect to ascertain what testimony witnesses would have given." Cases from this court sustaining the rule of practice are: Tyree v. Commonwealth, 160 Ky. 706; Clair v. Commonwealth, 154 Ky. 711; Brennon v. Commonwealth, 169 Ky. 815; Wallace v. Commonwealth, 167 Ky. 277; Quinlan v. Commonwealth, 149 Ky. 476. and Home Insurance Co. v. C., N. O. & T. P. R. Co. 182 Ky. 778. The text from Corpus Juris and the cases referred to proceed upon the theory that it is the duty of the litigant to ascertain from a witness who is present all he knows material to the case and especially should this rule apply where the witness was summoned and introduced by the complaining party.

In addition to the foregoing, it is also insisted that the court erred in rejecting testimony offered by the defendant to prove statements of the prosecutrix of former immoral conduct with men and to prove such former acts

on her part. Conceding the admissibility of such testimony, it is sufficient to say that after rejecting it in this case, when first offered, the court later reconsidered its rulings and admitted the testimony which evidently cured the error, if any, in first rejecting it.

Upon the whole case we are convinced that the record contains no error prejudicial to the substantial rights of the defendant, and the judgment is affirmed.