## Hogue v. Commonwealth.

June 20, 1947.

K. S. Alcorn, Judge.

James G. Begley and Henry Jackson for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Appellant, Shirley Lee Hogue, was convicted of forcibly raping Rosetta Gooch and his punishment was fixed at confinement in the penitentiary for 10 years (KRS 435.090). He asks that the judgment be reversed on two grounds: (a) that the verdict is flagrantly against the evidence; (b) the court did not instruct on the whole law of the case.

Rosetta testified that she was 17 years of age at the time the offense was committed and that she had met appellant for the first time when she was introduced to him by Stanley Blair in Danville about 7 o'clock on the night of July 27, 1946. Blair was in the company of a 17 year old girl, Anna May Lane, whom he also introduced to Rosetta that night. Appellant was 21 years of age, Blair was 26 and both were married.

These four young people remained together in the Gem Drug Store in Danville some little time and then took a taxi to the Mayfair, a dance hall some distance from Danville. Both couples went inside and danced a time or two. Then Blair and Anna May went outside. Rosetta testified that shortly thereafter appellant suggested that they go find the other couple. They went outside and over her protest he grabbed her by the arm and forced her to go down a lane with him where he struck her on the head with a small rock, threw her down and ravished her.

Rosetta further testified that in going down the lane they passed Blair and Anna May and she asked Blair "to make Shirley Hogue turn loose my arm." But Blair neither said nor did anything. That while appellant was attacking her she called to Blair four or five times and although Blair and Anna May were close by, he did not answer her. Presently, "Stanley hollowed for us;" that she and appellant then went up the lane

to where the other couple were. The men walked together and she told Anna May what had happened and that she was going to tell a cop as soon as she got to town.

She further testified that when they got to the Mayfair a cab came up and let three people out; whereupon all four of them got in the cab and went back to town together without further incident. Rosetta said her dress and underclothes were bloody and when she reached home about 10 o'clock that night she told her brother she had been mistreated. She admitted that she falsely told appellant in the drug store before going to the dance hall that she had married the day before and stayed with her husband that day and the following night, which was the night preceding the occurrence of which she complained.

Dr. E. G. Guttery, who made a vaginal examination of her after midnight, found her hymen ruptured and the girl was bleeding, which convinced him that the rupture was recent; but he did not see any semen.

Two police officers and a deputy sheriff who went to appellant's home that night to arrest him testified that when they told him of the charge, his reply was that he was human and that while he tried to, he did not do it. The chief of police quoted this conversation as, "He (appellant) said he was human and tried her; that he asked her, and she said she did not do anything like that, and that was as far as he got." Appellant, his father and his sister all denied that he made any such statement to the officers and what passed between them was that the officers said he was charged with knocking the girl in the head and asked him, "Did you do it?" to which he replied, "No."

Appellant denied going down the lane with the girl or mistreating her in any way. He was corroborated by Blair and Anna May, who denied that they were in the lane, or that appellant and Rosetta passed them or that she asked Blair to make appellant turn her loose or that she later called to Blair, or that Blair called to Rosetta and appellant to "come on." Anna May denied that Rosetta mentioned to her that she had been mistreated in any way.

Willie Runyon, the ticket taker at the Mayfair, testified that when appellant and Rosetta left the dance hall they, accompanied by Blair and Anna May, went to a cab from which three persons had just alighted. When he next looked in that direction these four people and the cab had gone. Junior Sears testified by affidavit that he was one of the three who got out of this cab; that when he and his party vacated the cab, appellant and Blair, accompanied by two girls, entered it. Irvin Chambers, the driver of the cab, testified that he had driven three people to the Mayfair; that appellant, Blair and the two girls got in his cab and he drove them back to Danville.

It is vigorously insisted by appellant that the verdict is not sustained by the evidence. With this we cannot agree. Rosetta is corroborated by Dr. Guttery, who examined her that night and found her hymen ruptured and she was bleeding. He testified the blood indicated the rupture was recent. Her brother, Wesley Gooch, testified that when Rosetta got home that night between 10 and 10:30 o'clock, her clothes were wrinkled and bloody and she voluntarily told him she had been mistreated. While Rosetta was contradicted by appellant, Blair and Anna May, and in a way by Runyon, the jury saw and heard the girl and appellant and his witnesses. As we said in Fugate v. Com., 291 Ky. 793, 165 S. W. 2d 573, the appearance and demeanor of the parties and the witnesses on the stand often influence the jury as to the truth or falsity of their testimony; and our consistent rule in such cases is that a verdict based upon the uncorroborated testimony of the prosecutrix will be sustained, unless her story is so highly improbable as to prove that it is false. However, Rosetta was corroborated to a considerable extent by Dr. Guttery and the condition of her clothing.

Appellant insists that the court erred in not instructing the jury on an attempt to rape. In this character of case where the crime is committed by force and there is evidence that it was not completed, it is proper not to instruct on attempt, which is a misdemeanor, but on the crime of detaining a woman against her will for the purpose of having carnal knowledge of her. Merriss v. Com., 287 Ky. 58, 151 S. W. 2d 1030,

1034. Relying upon Reed v. Com., 76 S. W. 838, 25 Ky. Law Rep. 1029, appellant most earnestly argues that he was entitled to an instruction on the lesser degree of the crime, which in this instance would be detaining Rosetta against her will.

The case at bar cannot be distinguished from the Reed opinion. There, a witness for the Commonwealth testified that Reed had confessed to him in jail that he had tried to rape the prosecutrix but had been unable to do so. It was written in that opinion that Reed was entitled to an instruction on the lesser degree of the offense. Here, appellant, Hogue, made practically the same confession as appeared in the Reed case. Two officers testified that he said, "He was a human being, and that he had tried but he did not do it." The third officer reported his conversation as, "He asked her and she said she did not do anything like that, and that was as far as he got."

While this third officer's testimony is not tantamount to Hogue saying he had tried to rape Rosetta but had failed, we cannot escape the conclusion that what he told the other two officers was that he had attempted to rape the girl but did not succeed. This is practically the same testimony that the Reed opinion said entitled the accused to an instruction on the lesser degree of the offense, which under the facts presented in this record is detaining a woman against her will for the purpose of having carnal knowledge of her. Therefore, we think the court erred to the prejudice of the accused's substantial rights in failing to give this detaining instruction, and for that reason the judgment is reversed.

Judge Thomas dissents from so much of the above opinion as holds that the accused admitted he attempted to rape prosecutrix but failed in his efforts. His view is that the statements of the officers as to what accused said to them, taken as a whole, is to the effect that he asked the girl to have sexual relations with him and upon her refusal he did not attempt to force her so to do. Therefore, he is of the opinion that no instruction should have been given on detaining the prosecutrix against her will in view of the other evidence, and that the judgment of conviction should be affirmed.