**Caleb NEWSOME, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 22, 1954.

Rehearing Denied Feb. 4, 1955.

Francis M. Burke, Pikeville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., J. A. Runyon, Pikeville, for appellee.

SIMS, Justice.

Upon a trial on an indictment charging him with raping Ellen Newsome "forcibly, violently and against her will" appellant was convicted of having carnal knowledge of a girl over 16 and under 18 years of age and his punishment fixed at confinement in the penitentiary for three years. In seeking to reverse the judgment, he argues the court erred: 1. in overruling his motion for a directed verdict; 2. in admitting incompetent evidence against him; 3. in permitting improper argument; 4. in instructing the jury.

All parties connected with this unsavory affair have the surname of Newsome, but none are related except Clarence and Hershel, who are brothers. Prosecutrix, Ellen Newsome, was 17 years of age on the day of the alleged crime and appellant was a married man with a family and was 43 years old. Ellen testified she stopped by the Valley Court Restaurant between 1:30 and 2 o'clock on the afternoon of March 16, 1953, to drink a coca cola. She knew Hershel, who asked her to come over with her drink to a table where he and Clarence were. She did so and they all joked and laughed a few minutes when she got sleepy and fell over on Clarence's shoulder, who told her to sit up as she was attracting attention. She left the restaurant holding

to Clarence, who took her to Hershel's car which was parked just outside. She had seen Caleb in the restaurant as well as outside where he was sitting in his car talking to Hershel, who was standing at the car door when she was helped by Clarence in the front seat of Hershel's car.

The next thing she remembered, she was on a road at Rocky Gap with "Clarence laying on top of me". Hershel and Caleb came up and Clarence said, "I can't handle her". Hershel remarked, "Scoot over, I can. He grabbed my pants, started tearing them off and I started fighting. The last thing I remember he was having intercourse with me". When she next "came to", she was "up a hollow somewhere" and Caleb told Hershel to get out of the car and "Caleb had intercourse with me— Caleb's car was parked right behind us." She next "came to" in Caleb's car and he had intercourse with her in it and bit her breast. She testified she was half dazed, ran out in the road and got in a passing truck.

Alfred Mercer testified he was passing in his truck that afternoon when Ellen ran out of "Lover's Lane", any part of which was plainly visible from the highway, with her slacks practically torn off and staggering like she was drunk. He drove her home and she screamed most of the time she was in his truck but he could smell no whiskey on her. When her father arrived home around 5:30 p.m., he found the girl in a stupor and took her to the hospital where she remained during the night. However, no doctor testified in the case.

Caleb testified he saw Ellen leave the restaurant with Clarence, although he was unacquainted with her, and she got in Hershel's car with Clarence and drove off with him. Caleb while seated in his own car talked to Hershel on some union business. When Hershel noticed Clarence had driven off in his (Hershel's) car, he asked Caleb to drive him after Clarence. They found Clarence and Ellen parked off the road at Rocky Gap. Hershel got out and told Clarence to bring the car back to the restaurant. Both cars returned to the res-

taurant and Hershel told Clarence to get Ellen out of the car and to take it to a designated spot. She refused to leave the car and Caleb and Hershel left in Caleb's car driving towards Virgie. They had a flat tire and pulled into the upper end of "Lover's Lane". Clarence must have followed them because he pulled in behind Caleb's car. After the tire was fixed, Ellen got out of Hershel's car, Hershel got in and drove away with Clarence, while Caleb drove off in his car. Caleb, Clarence and Hershel each denied having sexual intercourse with Ellen at any of the places she testified she was attacked.

Sally Tackett, a waitress in the restaurant, Minta Justice, a dishwasher there, and Earl Castle, who was seated at the table with Hershel and Clarence, all testified that Ellen did not get sleepy and fall over on Clarence's shoulder and she left the restaurant like any normal person. Sally further testified she saw nobody tamper with Ellen's coca cola. Two attendants at a filling station beside the restaurant also testified Ellen got in the car with Clarence without help and when he drove back to the restaurant they heard no outcry during the five or ten minutes he and the girl were parked there. Ellen had testified that when she came back from Rocky Gap with Clarence she was screaming as he drove up to the restaurant by the filling station and he rolled up the windows of the car.

Eugene Damron testified to two occasions when he saw Ellen having sexual relations with Thadeus Akers, a boy she was engaged to marry. She denied so doing but admitted she had had sexual relations when she was 15 years old with a boy named Fon Johnson during a period of "not over four months at the most".

■■ It is patent from this résumé of the evidence that this is a case for the jury. The rule in this character of case is that the uncorroborated testimony of the prosecutrix will sustain a verdict of conviction unless her story is so highly improbable as to show it is false. Fugate v. Com., 291 Ky. 793, 165 S.W.2d 573; Hogue v. Com., 305 Ky. 298, 203 S.W.2d 42; Bailey v. Com.,

312 Ky. 764, 229 S.W.2d 767. Ellen's story is sordid but not so highly improbable as to show it is false. And she was corroborated to a considerable extent by Alfred Mercer, who picked her up in his truck at the mouth of "Lover's Lane" in a hysterical condition, with her clothes "practically torn off".

The evidence to which appellant objected relates mostly to the physical condition of the prosecutrix, very little, if any, of which was incompetent, and none prejudicial. To illustrate, prosecutrix's father was asked how long he remained in the hospital, to which he replied, "* * * I ordered a stomach pump to see what was wrong. There was something serious wrong with the girl and * * *".

Defendant objects to the statement that there was something serious wrong.

Witness: "I am not a medical man but I know when something is wrong".

By Mr. Burke: "I want to object to that voluntary statement after I made my objection".

The Court: "I don't think there is anything prejudicial with that. * * *"

■ Many complaints are made of the argument of Mr. Daugherty, a lawyer employed to assist in the prosecution. He told the jury that in traveling the roads he saw evidence of "drinking, immorality and debauchery". * * * "That Dr. Preston told him that he did not make an examination of the prosecuting witness to determine her condition until the following day". The trial court erroneously overruled appellant's objection to the first quoted statement because he thought it not prejudicial. We agree with him it was not prejudicial but was certainly improper, as Mr. Daugherty himself must have known, and the court should have sustained an objection to it. Also, Mr. Daugherty must have known that the second quoted statement was incompetent, as any lawyer realizes that he cannot testify as a witness in an argument. The court sustained an objection to this argument and should have stopped there

but unfortunately added, "What Dr. Preston told Judge Daugherty or Mr. Burke is not evidence, and argument on what a witness does not swear by either side is not very impressive." But this inappropriate remark by the court could not have been prejudicial to appellant.

■ Appellant was asked if he had been convicted of a felony and replied in the affirmative. The court properly admonished the jury the question and answer could only be considered as affecting appellant's credibility as a witness, if the jury believed it did affect it. In his argument Mr. Daugherty said, "A man who has been to the penitentiary does not want to go back a second time". He had a right to refer to appellant's previous conviction as affecting his credibility, which is all this statement did.

The most serious question raised by appellant is that the court erred in instructing on his having carnal knowledge with prosecutrix with her consent. She was under the age of consent. The indictment charged him with forcibly raping her and she testified he did rape her by force without her consent, while appellant and his two principal witnesses testified none of them had sexual relations with her. The penalty for forcible rape is naturally severe: death, or life imprisonment without privilege of parole, or life imprisonment, or not less than 10 nor more than 20 years in prison. KRS 435.090. The punishment for having carnal knowledge of a girl over 16 and under 18 years of age with her consent is not less than two nor more than ten years in prison; and if it be shown beyond a reasonable doubt that prosecutrix is sexually immoral or has that reputation, the offending man may be fined in any sum not exceeding $500. KRS 435.100(1) (c). The offense described in KRS 435.100(1) (c) is a lesser degree of common law rape. Dunn v. Com., 193 Ky. 842, 237 S.W. 1072.

■ Appellant argues under the evidence in this case he was guilty of rape or nothing and it was prejudicial for the court to instruct on the lesser offense when there was

no evidence to support such instruction because the jury would not have convicted him if the minimum penalty it could have inflicted was ten years imprisonment. There would be more persuasion in this argument if prosecutrix possessed a better reputation.

In the circumstances presented by this record the jury could very well conclude, as it did, that prosecutrix consented and that appellant had relations with her, although she testified she was forced and he denied committing the act. We feel the court was justified in instructing under KRS 435.100(1) (c) and such instruction was not prejudicial to the substantial rights of appellant. Eads v. Com., 162 Ky. 89, 172 S.W. 104; Dunn v. Com., 193 Ky. 842, 237 S.W. 1072; Gilley v. Com., 280 Ky. 306, 133 S.W.2d 67.

The judgment is affirmed.