Harold W. MELAND, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 27, 1955.

E. B. Rose, Beattyville, Ollie James Cockrell, Jackson, Rodes K. Myers, Bowling Green, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

SIMS, Judge.

Appellant, Harold W. Meland, was convicted of forcibly raping Ardotha Melton, a girl slightly over 12 years of age, and was given a life sentence in the penitentiary. In seeking to reverse the judgment he insists the court erred: 1. In not directing a verdict in his behalf; 2. in permitting improper argument by the Commonwealth Attorney; 3. in not properly instructing the jury; 4. in ruling on evidence.

Appellant, a minister, was the Director of Bethel Children's Home in Breathitt County and Ardotha had been in the Home since she was 10 years of age. She testified that shortly after her twelfth birthday and in the spring of 1949 while she and appellant were alone in a room where clothes were repaired and sorted, known as the "Clothes House", he grabbed and hugged her, pulled her panties down and then pulled her down in his lap and against her will had intercourse with her. It took him seven or eight minutes to complete the act and immediately thereafter appellant told her not to tell what had happened; that she then left the "Clothes House", went to her room, washed her face and hands and came down to supper. She did not mention then what had occurred but several years later told appellant's son and daughter-in-law, as well as some girl friends.

Several witnesses testified that soon after Ardotha told of the occurrence, appellant said in a gathering in May 1952, attended by his wife, his son and daughter-in-law, several teachers and some ten or twelve girls in the school, "I want to confess to you girls that I went so far as committing adultery with you. I am going to try to be a better daddy to you from now on."

Appellant denied raping Ardotha or having any improper relations with her and denied making the alleged confession at the gathering. He insists that as the girl testified to no pain, had no bloody or torn clothes, made no outcry and as the "Clothes House" was open and near other buildings, where 75 or 80 children had the run of the place, her story is so improbable that it will not sustain a conviction. He testified the charge against him was inspired by his daughter-in-law and his son, Douglas, because appellant discharged the sister of his daughter-in-law in January 1953, before he left the Home in February of that year on a trip to the Holy Land for the sake of his health. There is testimony in the record by Harold Meland, Jr., that his brother, Douglas, told him if their father took his (the father's) adopted daughter from the Home, which he did, Douglas would have him indicted for rape.

We have written many times that the rule in this character of case is a verdict based upon the uncorroborated testimony of a prosecutrix will be sustained, unless her testimony is so highly improbable as to show it to be false. McDaniel v. Commonwealth, 308 Ky. 132, 213 S.W.2d 1007, and the cases there cited. The evidence here is in direct conflict and while prosecutrix' story is unusual, yet we cannot say her testimony is so highly improbable as to show it to be false. See Newsome v. Commonwealth, Ky., 274 S.W.2d 484. We hold prosecutrix' testimony was sufficient to take

the case to the jury and to sustain the verdict.

There is merit in appellant's complaint of improper argument by the Commonwealth Attorney. This argument was objected to at the time, motion was made to discharge the jury and exceptions were taken to the court's rulings and the entire argument with all objections and exceptions was incorporated in the bill of exceptions. We quote just a few excerpts from the argument:

"Here is a man operating under the name of God. Pretending to be a preacher, gentlemen, doing the little children like that. He tells you and he boasts about going to Palestine. Over there where your Savior and mine was crucified. Could you imagine a man like this. If there ever was a disciple of the devil, here it is. A man operating in God's name, treating little girls like that. Can you imagine him wanting to go over to see where Christ was crucified? Can you imagine him coming to the sacred grounds there and being disappointed because he wasn't there to help drive the nails in His hands? What was he over there for? Gentlemen, I can imagine how disappointed he was because he got there too late to help drive the nails in Christ's hands. * * *

"If you do have a feeling for him and if you do belong to his clan, and I know you don't, you would want to turn him loose. If anyone on this jury has a feeling for him and is in his class he will want to turn him loose. I don't believe there is anyone on this jury like that. * * *

"If this man sends any more souls to hell, it is going to be your fault. I won't be responsible for it. You have a right to dispose of him for now and forever.

"What are you going to do about it? You are going to die one of these days and it won't be long. Are you going to be ready? I hope you prepare. If you let this man run at large and destroy the children in this country and practice his crime, you will be responsible for it. And when you leave this earth you will have to account for it. When you die, gentlemen, you are going to have to account for your acts here on earth."

The Assistant Attorney General who briefed the case for the Commonwealth attempts to excuse this argument by saying it was in response to arguments made by counsel for appellant. That is not correct. We have read carefully the reported arguments as shown by the bill of exceptions of the two attorneys who represented appellant at his trial, and their arguments contain nothing which might be considered to have provoked the highly improper argument of the Commonwealth Attorney which goes out of the record and in places borders on sacrilege.

Many times we have condemned such arguments as may be seen in Goff v. Commonwealth, 241 Ky. 428, 44 S.W.2d 306, and East v. Commonwealth, 249 Ky. 46, 60 S.W. 2d 137, and the numerous authorities cited in those two cases. Likewise, we have repeatedly called to the attention of prosecuting attorneys that nothing is gained by vituperative abuse or by traveling outside the record, as in doing so they run the risk of a reversal and make necessary another trial with its accompanying arduous duties on the prosecution. A threat made against the jury that they will be considered in the same class as is accused and held up to scorn by the good citizens of the community should they acquit him, will never be tolerated by this court. In the very recent case of Stasel v. Commonwealth, Ky., 1955, 278 S.W.2d 727, we reversed the judgment on the sole ground that the argument of the prosecuting attorney, like the one here, was highly prejudicial in that he attempted to coerce the jury to return a verdict of guilty by telling them any other verdict would bring down the condemnation of the community upon them. The latitude allowed prosecuting attorneys in arguments in their zeal to do their duty and enforce the law will not permit such an argument as was

made in the instant case, and we are constrained to reverse the judgment on account thereof.

Appellant's criticism of the first instruction, that it uses the phrase "by force *Or* against her will and consent" when it should have been "by force *And* against her will and consent", is not well-taken. The instruction follows the language of the statute, KRS 435.090, and an identical instruction was approved in the very recent case of Hensley v. Commonwealth, Ky., 271 S.W.2d 891. However, we suggest that on another trial the court will separate the various penalties by the disjunctive "or", as the statute does, rather than by the use of commas. This will indicate more clearly than do commas that the penalties are separate and distinct.

We are not in accord with appellant that an instruction should be given on attempted rape on the theory there was no penetration and the act was not completed. Prosecutrix several times in her testimony stated there was a penetration of a half inch or an inch. But as appellant denied the act and testified he was never with the girl alone in the "Clothes House", there is nothing in the record to support an instruction on detaining a girl against her will. On another trial this instruction will be omitted.

Due to the unusual facts and circumstances surrounding this case in that prosecutrix did not cry out, there were no bloody or torn underclothes, she went to her supper immediately following the alleged crime, did not mention it until several years afterwards and the indictment was not returned for more than five years thereafter, the court properly instructed on carnally knowing a girl over 12 and under 16 years of age with her consent. KRS 435.-100(b).

Much complaint is made by appellant of erroneous rulings by the court on admission and rejection of testimony, some of which is well-taken. Prosecutrix was 17 years of age at the time of the trial and the Commonwealth Attorney asked her and other witnesses many leading questions. This should not be permitted upon another trial.

When the statement of appellant was introduced comprising his alleged confession, it was incompetent for the Commonwealth Attorney to ask, and the witness to state, that it was directed at prosecutrix. Nor should the court have admonished the jury it could consider such statement as applying only to prosecutrix. All a witness should be allowed is to state appellant's words and whether or not prosecutrix was present when he was alleged to have spoken them. A witness should not be permitted to put his interpretation upon appellant's words—that is for the jury. Neither the witnesses nor the court may comment on for whom the words were intended. Nor should the court admonish the jury that it was for them to determine for whom the words were meant. It must be presumed the members of the jury are sufficiently intelligent to know it is for them to construe such words.

The judgment is reversed for a new trial consistent with this opinion.