Lon ELLIOTT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 11, 1955.

grounds that (1) the verdict is flagrantly and palpably against the evidence; (2) he should have been granted a new trial upon the ground of newly discovered evidence; (3) the Commonwealth's Attorney made a statement which was prejudicial to his substantial rights; and (4) the court erred in admitting incompetent evidence.

Since we are of the opinion that the judgment should be reversed because of the prejudicial statement made by the Commonwealth's Attorney, we shall confine our consideration of the case principally to that question.

Lloyd Napier had married Hazel Elliott, a sister of Lon and Lee Elliott. The Napiers had five children. They were divorced some time prior to the fatal shooting. Mrs. Napier and her children were living with Lee Elliott, a short distance from the mouth of Turkey Creek, where the appellant lived, over a store. At about 9:00 p. m. on the Saturday night before the killing, which occurred shortly after midday on Sunday, Lloyd Napier showed up at Lee Elliott's home. Mrs. Napier and the children were there. Napier was drinking beer during the evening. He was said to have made the remark that he hated Hazel, would rather see her dead than living, and would kill her in a minute. Mrs. Napier said she left the room when that statement was made, but Lloyd called to her and said he would start trouble if she did not come back into the room, which she did. Napier spent the night at Lee Elliott's home. Mrs. Napier said she left there about 2 o'clock Sunday morning and went down to Lon's home, where she remained until after the shooting occurred.

Shortly before the time of the shooting, Napier, Junior Pridemore, Lee Elliott and Boyd Goodin, were behind the store building over which Lon Elliott lived. Napier had some whiskey which the parties were drinking. In addition to other work, Lon did some barbering. He was busy cutting hair when a difficulty arose back of the store building. All the evidence seems to indicate that the difficulty began when Monroe Goodin appeared on the scene. He

James S. Golden, Floyd Taylor, Pineville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Judge.

Lon Elliott was charged with the willful murder of Lloyd Napier, and upon his trial was sentenced to 21 years in prison. He urges reversal of the judgment on the

came from Lon Elliott's place and had with him a pistol which Lon said he had returned to Monroe. Lon's testimony showed that Napier said to Monroe Goodin, "I don't want to hear of anyone going with my ex-wife"; that Goodin said, "Are you throwing that at me?" and Napier replied, "Take it any way you like it." Napier, who was left-handed, had a knife in his left hand and started toward Monroe, who backed up a few feet and then fired the pistol into the ground; but Napier kept moving toward Monroe. Mrs. Napier, who was watching the scene from an upstairs window, screamed at that time and ran into another part of the house. Lon rushed down the steps to the scene of the affray, and, according to his testimony and that of his witnesses, stepped between Napier and Monroe in an effort to stop the difficulty. Napier then turned on Lon and started at him with his knife. Lon grabbed the pistol from Monroe's hands and fired three shots into Napier's body. A knife was found near Napier's left hand. Lon's testimony shows that Pridemore left the scene when Monroe fired the shot into the ground. Pridemore says, however, that he remained upon the scene and that when Lon came down the steps he went past Napier to Monroe and got the gun and turned on Napier and shot him. All of the witnesses who were present said that the principal parties were only a few feet apart when the shooting was done by both Monroe and Lon.

The contention of the appellant is, of course, that he shot Napier in defense of himself and others present. We have noted, however, that Pridemore said Napier was doing nothing when Lon got Monroe's gun and fired the fatal shots.

■ During his argument the Commonwealth's Attorney said the evidence showed that Monroe Goodin had been courting Lloyd Napier's wife and that the fair inference was that he might have been the cause of the divorce between Lloyd and his wife. Counsel for the appellant objected to this statement and moved the court to set aside the swearing of the jury. This motion was overruled. An objection was made and an exception saved. The bill of exceptions shows that the Commonwealth's Attorney repeated the statement. We believe that the statement of the Commonwealth's Attorney constituted prejudicial error. There was no proof that Monroe Goodin had ever gone with Mrs. Napier either before or after her divorce. The statement attributed to Napier that he did not want any one going with his ex-wife certainly would not warrant the statement made, or inference drawn, by the Commonwealth's Attorney. Napier was in a quarrelsome state of mind on Saturday night, and it was he who began the argument which ended in his being shot. See the cases of Meland v. Commonwealth, Ky., 280 S.W.2d 145; Bowling v. Commonwealth, Ky., 279 S.W. 2d 23; Stasel v. Commonwealth, Ky., 278 S.W.2d 727; and Brown v. Commonwealth, Ky., 275 S.W.2d 928; on the question of improper argument by the Commonwealth's Attorney.

■ When the sheriff reached the scene of the fatal shooting, Napier's body had been removed. He told of where he saw fresh blood on the ground and where a bullet had entered the ground, and testified also about footprints indicating where persons had stood. He estimated the distance between these two points as being between 20 and 25 feet. This proof was brought out by the Commonwealth's Attorney over the objection of counsel for the appellant. The court admonished the jury that the sheriff could testify as to what he saw, but they should not consider anything he drew as a conclusion. If there be another trial of the cause, we think the sheriff's testimony should be confined to what he actually saw at the scene of the killing.

■■ It is our view that the case was one for the jury. All the testimony, other than the statements of the sheriff, indicates that the principal parties, including Napier, Monroe Goodin and the appellant, were within a few feet of each other at all times up to the time of the fatal shooting. And, as we have indicated, there was no basis for the statement of the Commonwealth's Attor-

ney that Monroe Goodin had been the cause of trouble between Napier and his former wife. Lon Elliott may have used more force than was necessary to defend himself and the others whom Napier had threatened. On the other hand, his plea of self-defense may have been well made. These questions, however, are for a jury to determine.

On another trial of the cause, if there be one, the question of newly discovered evidence pertaining to whether Pridemore was present when the appellant shot Napier, will not arise.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.